#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### CHARLESTON DIVISION

| | |
|---|---|
| Alexandrina Atanassova and David Pendergast, individually and as parents and natural guardians of S.P, a minor,<br><br>            Plaintiffs,<br><br>    v.<br><br>General Motors LLC,<br><br>            Defendant. | Civil Action No. 2:20-cv-01728-RMG<br><br>**ORDER AND OPINION** |

Before the Court are Plaintiffs' motions to exclude Defendant's experts Manoj Modi, (Dkt. No. 46), and Jon Olson, P.E., CFEI, CVFI, (Dkt. No. 47). For the reasons set forth below, the Court denies Plaintiffs' motions.

**I.    Background**

This is a products liability case arising out of a fuel-fed fire that consumed the Plaintiffs' 2007 Silverado C1500 crew cab truck (the "2007 Silverado" or the "subject vehicle"). Plaintiffs allege that the vehicle fire occurred on June 27, 2018 and was not precipitated by a collision. Plaintiffs allege the fire originated in the undercarriage area where the vehicle's fuel storage tank and its fuel supply components were located. Plaintiff S.P—a minor and the child of Plaintiffs Alexandrina Atanassova and David Pendergast—allegedly suffered second and third degree burns to over 25% of her body because of the fire. Atanassova and Pendergast also allegedly suffered serious injuries.

In brief, Plaintiffs allege that the 2007 Silverado's fuel system and components were defectively and negligently designed, manufactured, and marketed and that these defects and negligence were the cause of the vehicle fire.

Plaintiffs have moved to exclude two of Defendant's liability experts, Messrs. Manoj Modi, (Dkt. No. 46), and Jon Olson, P.E., CFEI, CVFI, (Dkt. No. 47).

Plaintiffs' motions are fully briefed and ripe for disposition.

## II.    Legal Standard

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, even if a witness is "qualified as an expert by knowledge, skill, experience, training or education," the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b) – (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592 – 93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Factors to be considered include "whether a theory or technique…can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593 – 94. However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry," *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). This is especially true as the *Daubert* standard applies to non-scientific expert testimony as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 also requires courts "to verify that expert testimony is 'based on sufficient facts or data.'" *EEOC v. Freeman,* 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). Thus, "trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *Id.* The court may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001).

The Court is mindful that the *Daubert* inquiry involves "two guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir.1999). "On the one hand, ... Rule 702 was intended to liberalize the introduction of relevant expert evidence," *Id.*, and "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. Stanley,* 533 Fed. Appx. 325, 327 (4th Cir.2013) *cert. denied,* 134 S. Ct. 1002, 187 L.Ed.2d 852 (2014). On the other, "[b]ecause expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinion." *United States v. Fultz,* 591 Fed. App'x 226, 227 (4th Cir.2015) *cert. denied,* 135 S. Ct. 2370, 192 L.Ed.2d 159 (2015); *accord Westberry,* 178 F.3d at 261.

### III.   Discussion

#### a.   Mr. Jon Olson

Defendant has disclosed Olson as a liability expert. In his report, Olson opines on the causes of the fire that consumed the 2007 Silverado. Plaintiffs do not challenge Olson's qualifications, but instead argue that Olson's report should be excluded in whole because it lacks

a reliable methodology and is not based on sufficient facts or data.  The Court addresses Plaintiffs' various arguments for excluding Olson's report below.

First, Plaintiffs take issue with the following sentence in Olson's report, "Vehicle records indicate that the rear hydraulics were leaking approximately 1 year prior to the fire.  It is my opinion that the hydraulic leak referenced in the NTB [National Tire & Battery] repair record was leaking brake fluid." (Dkt. No. 47-1 at 8) (citing (Dkt. 47-3 at 3) (noting a hydraulic leak in the left rear)).  Plaintiffs claim Olson had no factual basis on which to make this conclusion.  Plaintiffs argue the NTB repair record has not been established to relate to the 2007 Silverado.  Plaintiffs also argue that even if the NTB repair records did refer to the 2007 Silverado, Olson provides no basis for concluding that the hydraulic leak indicated in the NTB repair record was *brake* fluid.  Plaintiffs also argue that Olson's conclusion fails to take into consideration Pendergast's affidavit and deposition testimony, both of which assert that in the year preceding the accident there were no problems with the 2007 Silverado's breaks.  Plaintiffs also allege Olson failed to discuss:

- "specifically, where in the 'rear hydraulics' the purported leak existed;
- the basis for stating that there was a leak or the that brake line was damaged. There is no testimony describing the alleged leak, no photographs of the alleged leak, and no documents describing the nature of the alleged leak;
- the amount of brake fluid that was leaking from the rear hydraulics during the year prior to the vehicle fire and at the time of the vehicle fire;
- how much brake fluid would be necessary to cause a fire on the exhaust system;
- how any fire started by the rear hydraulics, located behind the gas tank, could migrate forward when the vehicle was traveling 65-70 mph on the highway;
- why brake fluid would be leaking from a brake line while the vehicle was traveling on the highway on June 27, 2018, when the brake fluid was under no pressure in the brake line from braking;
- why the fire did not start earlier when the dual exhaust was installed sometime before the year 2013, so that at least five and a half years passed before the vehicle fire;
- any burn patterns showing that the fire started in the area of the right rear hydraulics; [and]

- why David Pendergast would not experience any issues with his brakes or need to add brake fluid to the brake fluid reservoir of the truck during the year prior to the vehicle fire."

(*Id.* at 10-11).

The Court declines to exclude Olson on the above points. First, the NTB repair records relied upon by Olson are likely admissible as business records, Fed. R. Evid. 902(11), and clearly concern the 2007 Silverado, (Dkt. No. 60 at 6) (noting it is undisputed that the VIN number contained in the NTB "Vehicle Inspection Report" referenced by Olson refers to the 2007 Silverado). *See also Andersen v. City of Chicago*, 454 F. Supp. 3d 808, 814–15 (N.D. Ill. 2020) ("[Expert witness] may rely on disputed facts to reach his opinions, as long as there is evidence to support such facts.") (collecting cases). Next, as explained by Defendant, the deposition testimony of Defendant's other liability expert Modi makes clear that the "only hydraulic fluid in the truck in the rear is brake fluid." *See* (*id.* at 9); (Dkt. No. 84-3 at 3). Further, a review of Olson's report reveals Olson properly applied an accepted methodology to the facts of the case to arrive at his conclusions. Olson applied FNPA 921 and excluded other potential sources for the vehicle fire until arriving at the conclusion that the fire was provoked by a leak in the rear hydraulics. (Dkt. No. 47-2 at 15-19). Contrary to Plaintiffs' assertion otherwise, Olson considered alternate sources for the fire and witness testimony in arriving at this conclusion. (*Id.* at 16, 18). Further, in rejecting Plaintiffs' experts' theories on the origin of the fire, Olson based his opinions on physical evidence obtained through first-hand observation of the subject vehicle and on testing conducted by Defendant. (*Id.* at 18). And while Plaintiffs argue Olson failed to consider or explain "all the facts"—that, for example, Olson did not explain why Plaintiffs failed to notice the hydraulic leak prior to the accident—such a "failure" on Olson's part is properly the subject of vigorous cross examination and is not a proper basis on which to grant a *Daubert* motion. *See Askew v. City of*

*Memphis*, No. 14-CV-02080-STA-TMP, 2016 WL 4533587, at *7 (W.D. Tenn. Mar. 15, 2016), *aff'd,* No. 14-CV-02080-STA-TMP, 2016 WL 2757435 (W.D. Tenn. May 12, 2016) ("The rejection of expert testimony, however, is the exception rather than the rule, and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") (citing *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x. 372, 376 (6th Cir. 2014)); *Kiessling v. Kiawah Island Inn Co. LLC*, No. 2:17-CV-02146-DCN, 2019 WL 331176, at *5 (D.S.C. Jan. 25, 2019) ("[I]n some cases, whether an expert should have considered certain facts when forming her opinion goes to the weight of the opinion, not its admissibility.") (citing *Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 54 (4th Cir. 1993)); *Id.* (declining to exclude expert because "[t]he decision to not examine certain evidence goes to the weight of the opinion, not its admissibility"); *Sparks*, 992 F.2d at 54 (objections regarding alleged shortcomings in an expert's analysis go to its weight and not admissibility).

Second, Plaintiffs argue that one of Olson's conclusions is so "contradictory" that Olson's entire report thus lacks a properly applied methodology. Namely, Olson states that "[w]itness testimony indicates the initial presence of fire underneath the vehicle, near the left rear passenger compartment door." (Dkt. No. 47-2 at 16). Olson then states that it is his opinion that "physical evidence, including increased levels of oxidation on the underbody sheet metal, place the origin of this fire at the rear of the fuel tank on the left side of the vehicle." (*Id.*). "Contradicting himself," Plaintiffs argue, Olson then opines that "[n]orth-northwest winds would have directed flames and heat from the right rear to the left front of the vehicle making the witness testimony consistent with this opinion." (*Id.*). In sum, argue Plaintiffs, "Olson's opined area of origin is inconsistent with the observations of all of the eyewitnesses but he does not explain these inconsistencies or why he disregarded this evidence as the law requires." (Dkt. No. 47 at 12-13) (further noting the bed of

the subject vehicle contained an aluminum toolbox and arguing that Olson "has not ruled out the effect of electrolysis initiated by the contact of aluminum with steel or the impact of the fuel tank fire (as opposed to a brake fluid fire) in causing the holes in the truck bed").

The Court declines to exclude Olson based on the above cited "inconsistencies." Contrary to Plaintiffs' contention, Olson's observations are not absolutely "inconsistent." In his report, Olson hypothesizes that the modified exhaust system on the 2007 Silverado "contributed to a deterioration of the polymer brake lines near the rear axel," thus "degrad[ing] the integrity of the polymer hydraulic brake fluid line and represent[ing] a competent ignition source for 'fugitive' brake fluid in this area." (Dkt. No. 47-2 at 17) (further noting that two significant sections of the exhaust system had been removed from the subject vehicle prior to Olson's examination). Olson further notes that when Plaintiffs were alerted by another driver that their vehicle was on fire, the 2007 Silverado was heading southbound on I-95. Thus, Olson's conclusion that north-northwest winds would have directed a fire originating at "the rear of the fuel tank on the left side of the vehicle" away "from the right rear to[ward] the front of the vehicle" is not wholly inconsistent. And, to the extent Plaintiffs argue that Olson did not consider "electrolysis" in his report, this argument, once again, goes to the weight of Olson's report and not its admissibility. *See Sparks*, 992 F.2d at 54 (objections regarding alleged shortcomings in an expert's analysis go to its weight and not admissibility); *In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2326, 2018 WL 8054374, at *3 (S.D.W. Va. May 30, 2018) (declining to exclude defendant's expert and noting that if "plaintiffs believe that Dr. Badylak did not give sufficient consideration to the alternative theory proposed by Dr. Iakovlev, they can address this purported deficiency on cross-examination.").

Third and lastly, Plaintiffs take issue with Olson's Opinions Nos. 5, 6, and 8. Plaintiffs note:

> **In his Opinion No. 5**, Olson states his opinion that "the modified exhaust system, including the added tailpipe on the left side of the vehicle, contributed to a deterioration of the polymer brake lines near the rear axle. This led to the pressurized release and hot surface ignition of brake fluid within the area of origin. Furthermore, the application of the brakes by Mr. Pendergast once he was alerted to the fire, led to the additional release of brake fluid and an increase in the size and intensity of the fire underneath the vehicle." **In Opinion No. 6**, on page 17, Olson states that "it is my opinion that the modified exhaust system on the subject vehicle degraded the integrity of the polymer hydraulic brake fluid line and represented a competent ignition source for 'fugitive' brake fluid in this area." **In Opinion No. 8**, on page 17, Olson opines that a fire starting in the area of the rear brake line, located behind the fuel tank, could compromise the fuel tank and release gasoline vapors.

(Dkt. No. 47-1 at 13). Plaintiffs argue the above opinions are inadmissible because Olson had no "no evidentiary foundation [upon which to find] there was a leak in the rear brake line or where in the brake line a leak existed." (*Id.*). Plaintiffs also criticize as unsupported by the record Olson's conclusion that "the application of the brakes by Mr. Prendergast once he was alerted to the fire, led to the additional release of brake fluid." (*Id.*). Plaintiffs further argue Olson's methodology is flawed because he "did not explain why there could be degradation of the brake line and leakage when Arlyn Pendergast and David Pendergast did not notice any evidence of brake fluid leaks in the subject vehicle during the five and half years preceding the vehicle fire." (*Id.* at 15). Plaintiffs then argue that certain physical evidence present in the 2007 Silverado documented by Olson fits better with their theory of the fire than Olson's and that because Olson does not "explain this important discrepancy," his report must be excluded.[1] Finally, Plaintiffs argue that Olson failed

---

[1] Specifically, Plaintiffs note Olson found a hole in the floorboard of the rear left seating position, which is above the EVAP canister. Explained simply, Plaintiffs' expert Richard Hille believes that debris striking the "unprotected" EVAP canister caused the vehicle fire. Olson, by contrast, opines that the vehicle fire was started by leaking brake fluid. *See* (Dkt. No. 47-2 at 13, 15-16, 18). Because Olson acknowledges the hole in the rear floorboard, Plaintiffs conclude that, "[i]f Olson's

to fully consider the affidavit of Clifford Hall, a volunteer Captain with the Clarendon County Fire Department. (*Id.* at 16-21).

The Court declines to exclude Olson on the points discussed above. First, as noted *supra*, the NTB records, and physical evidence observed by Olson, properly provide a foundation for Olson's theory of the vehicle fire and for Olson's opinion that Pendergast's application of the brakes fed the vehicle fire by releasing additional brake fluid. Second, the critique that Olson's report does not explain why Plaintiffs failed to experience brake trouble with the 2007 Silverado prior to the accident, or that Olson's report does not give appropriate attention to or "properly consider" Captain Hall's affidavit, do not go to the admissibility of Olson's report but to its weight or credibility. *Sparks*, 992 F.2d at 54; *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Lastly, the Court rejects Plaintiffs remaining arguments concerning Olson's fire origin area and his discussion regarding oxidation. None of the critiques Plaintiffs level properly attack Olson's underlying methodology or Olson's application of that methodology. Instead, Plaintiffs' criticisms are more properly classified as disagreements with Olson's conclusions. *See* (Dkt. No. 60 at 10) (referencing Olson's report and noting "[t]his was a fire *fed* by fuel but that does not mean it was a fire *started* by fuel"); *Hovey v. Cook Inc.*, No. 2:13-CV-18900, 2015 WL 1405565, at *5 (S.D.W. Va. Mar. 26, 2015) (noting that the court, as "the gatekeeper of expert testimony . . . must not concern [itself]

---

theory is correct and fires underneath the vehicle can burn through metal in vehicle fires, these photographs support Plaintiffs' theory that the fire originated from the EVAP canister." (Dkt. No. 47-1 at 16-17) (noting "Unlike the truck bed, there was no aluminum on the floorboard in the rear passenger compartment to cause the hole through electrolysis, and the hole is above the location of the EVAP canister. Olson's opinion that the holes in the left front of the truck bed constitute evidence that the brake line started the fire is a red herring. If the holes in the metal mean anything, the fire more likely than not originated in the front of the fuel tank under the rear passenger cab.").

with the *correctness* of the expert's conclusions and should instead focus on the soundness of his methodology") (emphasis added) (internal quotation marks omitted); *Cavallo v. Star Enter.,* 100 F.3d 1150, 1158–59 (4th Cir.1996) (noting the court need not determine that the proffered expert testimony is irrefutable or certainly correct).

For the above reasons, the Court denies Plaintiffs' motion to exclude Jon Olson, P.E., CFEI, CVEI. (Dkt. No. 47).

### b. Mr. Manoj Modi

Defendant has designated Modi to opine on the cause and origin of the fire in the 2007 Silverado. Plaintiffs do not challenge Modi's qualifications, but argue his testimony should be excluded because his opinions lack a reliable basis in fact and are irrelevant. The Court addresses Plaintiffs' various arguments below.

First, Plaintiffs argue that because many of Modi's opinions are based on those of Olson, and Olson's testimony is inadmissible, Modi's respective opinions must be excluded. (Dkt. No. 45-1 at 8-12); *Barrett v. Rhodia Inc.*, 606 F.3d 975, 982 (8th Cir. 2010) (expert's opinions about the source of the plaintiff's toxic tort exposure was properly stricken when they were based entirely on another expert's opinion in the case "which had been deemed excessively speculative"). In so arguing, Plaintiffs repeat nearly verbatim many of the arguments advanced against Olson which the Court considered—and rejected—*supra*. Because the Court denies Plaintiffs' motion to exclude Olson, the Court accordingly declines to exclude Modi on the basis that he improperly relies on the testimony of Olson. *See* (Dkt. No. 45-1 at 8-12).

Second, Plaintiffs argue the "foundation of Modi's opinion is unreliable." Plaintiffs argue:

> Mr. Modi created drawings to show the location of the dual exhaust pipes on the subject vehicle. On page 22 of his report, Modi shows a diagram of the left side of the exhaust system resting on the rear axle and a measurement showing the left-side exhaust pipe 12 mm, or around ½ inch, from the brake hose. On page 23, Modi included two photographs showing the exhaust pipes resting on the rear axle.

> Modi's calculations are unreliable because they are not based on the actual location of the exhaust pipes at the time the fire occurred. Modi's diagram and photos do not represent the condition of the vehicle before the fire because the exhaust pipe rubber hanger straps melted in the fire, allowing the exhaust pipes to drop down to the rear axle.

(Dkt. No. 46-1 at 12) (also noting that Modi "did not perform testing" regarding the flammability of the brake fluid leaking out of the brake line).

The Court rejects Plaintiffs' above arguments. As Defendant correctly notes, Plaintiffs' objections regarding the accuracy and reliability of Modi's report are without citation to any record evidence. (Dkt. No. 61 at 75) (also noting Plaintiffs fail to "propose any correction to the diagram or show how any such correction would have materially changed the *approximate* distances between the aftermarket exhaust and the other components of the vehicle"). Further, in so far as Plaintiffs critique Modi for failing to perform the above noted test, Modi was permitted to rely on Olson's report wherein Olson cited to such tests. Fundamentally, Plaintiffs' criticisms go more toward the weight and credibility of Modi's testimony than its admissibility. *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 450 (8th Cir. 2008) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility.").

Third, Plaintiffs argue Modi failed to properly consider the testimony of Pendergast and Hall in reaching his conclusions. (Dkt. No. 46-1 at 13-15). Plaintiffs put forth the nearly identical arguments as those leveled against Olson regarding the same alleged deficiencies. *See, e.g.*, (*id.* at 14) (arguing Modi did not properly reconcile his opinions with the testimony of Hall who stated the fire was "definitely a fuel-fed fire"). *But see* (*id.* at 15) (conceding that "circumstantial evidence is admissible in fire cases where the product in question is consumed by the fire"—as much of the 2007 Silverado was).

For the same reasons stated *supra* regarding Olson, the Court rejects the above arguments. Again, Plaintiffs point to no underlying flaw in Modi's methodology but instead take issue with his conclusions and, specifically, the weight which he gave to certain facts or witnesses. Such objections do not provide a proper basis on which to exclude expert testimony. *See Kiessling*, 2019 WL 331176, at *5 ("[I]n some cases, whether an expert should have considered certain facts when forming her opinion goes to the weight of the opinion, not its admissibility."); *Id.* (declining to exclude plaintiff's expert because "[t]he decision to not examine certain evidence goes to the weight of the opinion, not its admissibility"); *Sparks*, 992 F.2d at 54.

Fourth, Plaintiffs' argue Modi's testimony should be excluded because, in his Opinion No. 2, he opines that the placement of the EVAP canister is "reasonably safe" even though the EVAP canister—*according to Plaintiffs' experts*—is "susceptible" to road strikes from debris. (Dkt. No. 46-1 at 15-16). Relatedly, Plaintiffs argue Modi should be excluded because:

> **In Opinion No. 4**, Mr. Modi opines that there is no evidence of any road strikes to the vapor canister or vapor canister bracket. However, Plaintiffs' expert Richard Hille measured the distortion in the canister bracket and found that the vapor canister bracket was bent upward 6.7 degrees on the subject vehicle. Mr. Modi does not dispute that the canister bracket was bent; *instead, he draws the conclusion* without any evidence that the upward bend "is consistent with post fire handling of the subject vehicle.*"* He does not explain the factual basis for this conclusion.

(Dkt. No. 46-1 at 17) (emphasis added) (internal citations omitted). Additionally, Plaintiffs object that:

> **In Opinion No. 6**, Mr. Modi opines that Stephen Syson's allegations of corrosion of the flange and quick connectors are speculative and not supported by the evidence. Mr. Modi opines that there was no corrosion because the fuel pump mount and fuel line connectors were not found after the fire to confirm whether there was corrosion. This is fallacious argument, especially in fire cases where the products at issue are consumed or lost in the fire. It does not establish a reliable foundation or methodology.
>
> Mr. Syson's opinions that the fuel pump mount and fuel line connectors can result in fuel leaks because of corrosion are based on his background, experience, and

> expertise in the field of automotive design analysis engineering and his many years of experience as an employee of GM. For example, Mr. Syson explained that the configuration of the well in fuel pump mounts trap dirt, debris, and road salt, which will accelerate corrosion. Mr. Syson also explained that plastic fuel line connectors "tend to creep if subjected to continuous force as they are in the Silverado vent line connectors." Mr. Modi's opinions do not take this into account and ignore inconsistent data.

(*Id.* at 19) (internal citations omitted).

The Court rejects the above arguments outright. Plaintiffs are plainly taking issue with Modi's conclusions because they disagree with them—not because of flaws in Modi's methodology. Such "disagreements"—however strenuously argued—are not a proper basis on which to grant a *Daubert* motion. *Smith v. Wyeth-Ayerst Labs Co.*, 278 F. Supp. 2d 684, 710 (W.D.N.C. 2003) ("[An expert's] opinion is not unreliable merely because he has a different opinion than that of Plaintiff's expert. Simply stated, *Daubert* and its progeny does not eliminate the need for, or otherwise, prohibit, a 'battle of the experts' as long as each of the expert's reasoning and methodology is sound").

Fifth, Plaintiffs take issue with Modi's Opinion No. 3 that damage to the EVAP canister could not have started the fire that consumed the 2007 Silverado. Plaintiffs argue:

> Mr. Modi opines that the fire could not have started from damage to the vapor canister based on testing he performed. The foundation for Mr. Modi's opinion is questionable and unreliable. He does not reference any existing test protocol or methodology for his testing and has not shown how his test protocol or methodology are reliable or generally accepted among his peers. Nor does he validate his test method to measure a fixed or known vapor concentration in order to provide a calibration. These create enormous analytical gaps that cannot be ignored.
>
> Mr. Modi did not specify if he replaced the vapor canister with a new one for his testing or if he used the existing canister on the subject vehicle. He does not specify if or how he conditioned the vacuum canister for his testing. Modi's test results are only valid for the parameters of his test and utilizing the test vehicle--not the subject motor vehicle. Mr. Modi also does not consider spilled carbon particles in his testing. Previous testing has shown that spilled carbon particles are sufficient to

> ignite a fire. Again, his methodology and data are unreliable foundations for his conclusions

(Dkt. No. 46-1 at 16-17)

The Court rejects the above argument. As Defendant persuasively argues, Modi developed his test protocol to match the "facts and parameters described in Plaintiffs' depositions and expert reports." (Dkt. No. 61 at 11). Further, the hydrocarbon analyzer used in Modi's testing was properly calibrated, *see* (Dkt. No. 61-2), and Modi explicitly indicated that he was using an "exemplar vehicle" during said testing, (Dkt. No. 46-11 at 9). In his report, Modi details how he attempted to simulate the conditions of 2007 Silverado on the day of the accident. (*Id.*). And, as Defendant further notes, "Plaintiffs fail to cite any testing, evidence, or expert opinions that spilled carbon particles are capable of ignition under the conditions at issue in this case." (Dkt. No. 61 at 12). In sum, the Court finds no merit to the above objections.

Sixth and lastly, Plaintiffs take issue with Modi's Opinion No. 5. In his report, Modi opines that the alternate location for the EVAP canister proposed by Plaintiffs' expert Hille is not feasible. (Dkt. No. 46-11 at 14) (opining that "[i]t is not physically possible to mount the vapor canister [in the location suggested by Hille] due to a hard interference with the floor that would result in not meeting design requirements"); Hille Report, (Dkt. No. 46-12 at 10, 14) ("Another safer alternative design would be to use the . . . location . . . above the drive shaft."). Plaintiffs argue Modi's report was "faulty and unreliable because he only considered one placement of the canister when he could have made adjustments in his design to allow more room for the vapor canister." (Dkt. No. 46-1 at 17-18). Plaintiffs do not indicate what "adjustments" Modi should have made.

The Court rejects Plaintiffs' arguments. As Defendant notes, "Plaintiffs claim the demonstrated interference is merely a 'packaging' issue and that Mr. Modi should have

reconfigured the surrounding design elements to allow the canister to fit in Plaintiffs' proposed location. However, by so arguing, Plaintiffs' improperly attempt to shift the burden on proving feasible alternative design to GM LLC and its expert Mr. Modi. GM LLC and Mr. Modi are not required to redesign an entire vehicle to accommodate Plaintiffs' proposed canister location. Rather, this is Plaintiffs' required burden to show such a redesign would be feasible . . . ." (Dkt. No. 61 at 12) (internal citations omitted). Put simply, Plaintiffs have again failed to point out a flaw in Modi's methodology or its respective application.

For the above reasons, the Court <u>denies</u> Plaintiffs' motion to exclude Mr. Manoj Modi. (Dkt. No. 46).

**IV.   Conclusion**

For the foregoing reasons, Plaintiffs' motions to exclude Manoj Modi, (Dkt. No. 46), and Jon Olson, P.E., CFEI, CVFI, (Dkt. No. 47), are **DENIED.**

**AND IT IS SO ORDERED.**

<u>s/ Richard Mark Gergel</u><br>
United States District Court Judge

February 22, 2021
Charleston, South Carolina