**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Alexandrina Atanassova and David Pendergast, individually and as parents and natural guardians of S.P, a minor, | ) ) ) ) | Civil Action No. 2:20-cv-01728-RMG |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| General Motors LLC, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Before the Court is Defendant's motion for summary judgment. (Dkt. No. 45). Also before the Court are motions by Defendant to exclude the testimony and opinions of Plaintiffs' experts Mr. Stephen R. Syson, (Dkt. No. 40), Dr. Lila Laux, (Dkt. No. 41), Dr. Steven A. Kahn, (Dkt. No. 42), and Dr. Kenneth Boudreaux, (Dkt. No. 44). For the reasons set forth below, the Court: (1) grants in part and denies in part Defendant's motion for summary judgment; (2) grants in part and denies in part Defendant's motion to exclude the testimony of Mr. Stephen R. Syson; (3) grants Defendant's motion to exclude the testimony of Dr. Lila Laux; and (4) denies Defendant's motions to exclude the testimonies of Drs. Steven A. Kahn and Kenneth Boudreaux.

## I.    **Background**

This is a products liability case arising out of a fuel-fed fire that consumed the Plaintiffs' 2007 Silverado C1500 crew cab truck (the "2007 Silverado" or the "subject vehicle"). Plaintiffs allege that the vehicle fire occurred on June 27, 2018 and was not precipitated by a collision. Plaintiffs allege the fire originated in the undercarriage area where the vehicle's fuel storage tank and its fuel supply components were located. Plaintiff S.P—a minor and the child of Plaintiffs Alexandrina Atanassova and David Pendergast—allegedly suffered second and third degree burns

to over 25% of her body because of the fire.  Atanassova and Pendergast also allegedly suffered serious injuries.

In brief, Plaintiffs allege that the 2007 Silverado's fuel system and components were defectively and negligently designed, manufactured, and marketed and that these defects and negligence were the cause of the vehicle fire.

Defendant moved for summary judgment.  (Dkt. No. 45).  In conjunction with its summary judgment briefing, Defendant moved to exclude or limit the testimony of four of Plaintiffs' experts: (1) Mr. Stephen R. Syson, (Dkt. No. 40); (2) Dr. Lila Laux, (Dkt. No. 41); (3) Dr. Steven A. Kahn, (Dkt. No. 42); and (4) Dr. Kenneth Boudreaux, (Dkt. No. 44). Plaintiffs oppose Defendant's motion for summary judgment, (Dkt. No. 74), and all of Defendant's *Daubert* motions, (Dkt. Nos. 62, 63, 64, 65).  Defendant filed replies. (Dkt. Nos. 75, 76, 80, 84).

Defendant's motions are fully briefed and ripe for disposition.

## II.    <u>Legal Standards</u>

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  Thus, even if a witness is "qualified as an expert by knowledge, skill, experience, training or education," the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data."  Fed. R. Evid. 702(b) – (d).  "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592 – 93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

-2-

Factors to be considered include "whether a theory or technique…can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593 – 94. However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). This is especially true as the *Daubert* standard applies to non-scientific expert testimony as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

III.    **Discussion**

The Court first addresses Defendant's motion for summary judgment.  Then the Court addresses Defendant's *Daubert* motions.

### Defendant's Motion for Summary Judgment

First, Defendant argues it is entitled to summary judgment on Plaintiffs' product design claims because Plaintiffs cannot prove that, at the time of the accident, the 2007 Silverado was in "essentially the same condition as when it left the hands of the defendant."

"In a products liability action, the plaintiff must prove (1) that he was injured by the product; (2) that the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant." *Branham v. Ford Motor Co.*, 390 S.C. 203, 245 (2010).  South Carolina courts have barred recovery where "it can be shown that a product was (1) materially altered before it reached the injured user and (2) such alteration could not have been expected by the manufacturer or seller." *Ervin v. Cont'l Conveyer & Equip. Co.*, 674 F. Supp. 2d 709, 723 (D.S.C. 2009).  Importantly, however, questions as to whether an injury was caused by a defect in design or whether the defect was created by the subsequent unforeseeable modification of a third party are generally for a jury. *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 466, 494 S.E.2d 835, 844 (Ct. App. 1997) (citing *Kennedy v. Custom Ice Equip. Co.,* 271 S.C. 171, 246 S.E.2d 176 (1978))

The Court denies Defendant's motion for summary judgment as to Plaintiffs' product design claims. As made clear by their respective briefing—and the expert testimony cited therein—the parties clearly dispute whether the modifications made to the subject vehicle's exhaust system were material to the vehicle fire or foreseeable by Defendant.  Therefore, the question of whether the 2007 Silverado was in essentially the same condition as when it left the

hands of Defendant is clearly one for the jury. *Small*, 329 S.C. at 466 (affirming trial court's denial of defendant's motion for a directed verdict and JNOV because questions of fact existed as to whether undisputed alterations to the product caused plaintiff's injuries).

For the above reasons, the Court <u>denies</u> Defendant's motion on this point.

Next, Defendant argues that Plaintiffs' manufacturing defect claims fail as a matter of law because the record is devoid of evidence in support of such claims. Plaintiffs admit that no such evidence exists. Plaintiffs also indicate that they are no longer pursuing such claims.

For the above reasons, the Court <u>grants</u> Defendant's motion for summary judgment as to Plaintiffs' manufacturing defect claims.

Next, Defendant argues that Plaintiffs' failure to warn claim fails because Plaintiffs cannot show a different warning would have changed the outcome in this case.

Defendant notes that neither Pendergast nor Atanassova read the subject vehicle's Owner's Manual, Warranty Booklet and Maintenance Schedule, or Service Manual. *See* (Dkt. No. 45-3 at 4-5); (Dkt. No. 45-4 at 4). Consequently, argues Defendant, Plaintiffs cannot show that "a different, adequate warning would have changed the outcome in this case." *Burns v. Coty, Inc.*, No. 1:15-CV-5060-TLW, 2018 WL 3575930, at *5 (D.S.C. May 16, 2018) ("To survive summary judgment, even if she has shown that the warning was inadequate, [plaintiff] must show that a different, adequate warning would have changed the outcome in this case.").

The Court finds that Defendant is entitled to summary judgment on Plaintiffs' failure to warm claim. Because neither Pendergast nor Atanassova read the 2007 Silverado's Owner's Manual, Warranty Booklet and Maintenance Schedule, or Service Manual, a different warning would not have made a difference in this case. *See* Pendergast Deposition, (Dkt. No. 45-3) ("Q: So as you sit here today, do you know if you ever reviewed the vehicle's owner's manual? A: No,

ma'am. Q. And as you sit here today, have you ever reviewed the vehicle's service checklist? A: No, ma'am."); Atanassova Deposition, (Dkt. No. 45-4) ("Q: Do you remember ever reviewing any of that material? A: I don't remember.  I don't think so."); *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998) (stating that "[t]he plaintiff has the burden of showing that a warning would have made a difference in the conduct of the person warned"); *Andrews v. Buckman Laboratories, Inc.*, 181 F.3d 86, 1999 WL 321526 (4th Cir. 1999) (noting plaintiff's statement that he did not look at posted warnings for employees because he believed "he had no reason to" and concluding that, under South Carolina law, the plaintiff's failure to read the warnings "preclude[d] any causal link" between the warnings and his injuries); *Burns*, 2018 WL 3575930, at *6 (denying defendant's motion for summary judgment on failure to warn claim where plaintiff testified she "glanced" over the warning label).

For the above reasons, Defendant's motion is <u>granted</u> as to Plaintiffs' failure to warn claim.

To summarize, the Court grants in part and denies in part Defendant's motion for summary judgment. (Dkt. No. 45).   Summary judgment is <u>granted</u> to Defendant on Plaintiffs' (1) manufacturing defect and (2) failure to warn claims. Defendant's motion is otherwise <u>denied</u>.

## **Defendant's Motions to Exclude**

### *a.     Mr. Stephen R. Syson*

Plaintiffs have disclosed Mr. Stephen R. Syson as a design defects expert.  Defendant does not dispute Syson's qualifications.  Instead Defendant takes issues with various aspects of Syson's report and argues that Syson's report should be excluded either in whole or in part.  The Court addresses each of Defendant's arguments below.

First, Defendant originally argued that Syson's testimony should be excluded because Plaintiffs had not—at the time Defendant filed its motion—disclosed the underlying facts and data upon which Syson relied in drafting his report. (Dkt. No. 40 at 3-5) (arguing that Syson's report,

as submitted to Defendant, did not include its Exhibits C and D, **hereinafter** "The Exhibits"). In opposing Defendant's motion, Plaintiffs admitted The Exhibits were untimely disclosed to Defendant on January 27, 2020—twelve days after Defendant filed its motion to exclude Syson. (Dkt. No. 63-1 at 7). Plaintiffs argued, however, that the delay was harmless. (*Id.* at 6-8). In its reply, Defendant admitted Plaintiffs provided The Exhibits to it on January 27, 2020, in advance of Syson's deposition. (Dkt. No. 76 at 3-4). Defendant nevertheless maintained that it was so prejudiced by Plaintiffs' late disclosures that exclusion of Syson's report was Defendant's only recourse.

A party who fails to comply with the expert witness disclosure rules is prohibited from "us[ing] that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "District courts are accorded 'broad discretion' in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). Courts are guided by the following factors in making this determination: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.* "The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Id.* (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

Applying these principles here, the Court finds Plaintiffs' error harmless in untimely disclosing The Exhibits. The information missing from Syson's report was undoubtedly important

and this factor weights in Defendant's favor.  The remaining factors, however, do not. At best, Defendant's initial brief in support of its motion only vaguely argued "surprise" regarding The Exhibits and only speculatively argued that Plaintiffs could not cure any potential harm. Crucially, in their opposition to Defendant's motion, Plaintiffs explicitly *offered* to cure any such harm by giving Defendant additional time to review The Exhibits and by moving Syson's deposition date. (Dkt. No. 63-1 at 7).  Considering Plaintiffs' offer to give Defendant additional time to review The Exhibits, and considering Defendant never sought to reschedule the deposition of Syson in accordance with Plaintiffs' offer, the Court declines to exclude Syson's report based on Plaintiffs' untimely disclosures. *See Bresler*, 855 F.3d at 191, 193 (affirming trial court's decision to permit evidence and an exhibit of an expert that was not disclosed for nearly a year and a half after the report was tendered and just two months prior to trial, and after a deposition had been taken of that expert).[1]

For the above reasons, Defendant's motion is <u>denied</u> on this point.

Second, Defendant argues that Syson's report should be excluded because there is no evidence his opinions regarding the cause of the accident are (a) based on "substantially similar incidents" or (b) based on recalls that "apply" to Plaintiffs' vehicle.  (Dkt. No. 40 at 6-7).  In effect, Defendant attempts to argue that Syson's methodology is unreliable.   To be precise, when Defendant filed its motion, the above arguments were premised only on the fact that Syson's report lacked The Exhibits—the documents which contained the data Syson substantively relied on in formulating his opinions. *See* (Dkt. No. 40 at 6) (noting Syson "bases his product defect opinions

---

[1] The Court also notes that despite receiving Syson's report on November 3, 2020, Defendant waited over two months—until January 11, 2021, just four days before the dispositive motions deadline in this case—to notify Plaintiffs that The Exhibits were missing. *See* (Dkt. No. 40-2 at 3) (January 11, 2021 email from Defendant to Plaintiffs asking for "Attachments C and D . . . to the report that we received on November 3rd.").

on undisclosed instances of other complaints and recalls concerning others vehicles" and arguing said opinions must be excluded because Plaintiffs had not "disclosed any of these 'other incidents' on which Syson so integrally relies"); (*Id.* at 7) ("Here, although Syson admittedly relied on evidence of 'recalls and corrective repairs on GM sport utility vehicles, and other GM vehicles,' Plaintiffs have failed to disclose any of this evidence with their required expert disclosure."). In its reply—filed after Plaintiffs had produced The Exhibits and after Defendant had deposed Syson—Defendant shifted gears. Therein, Defendant attempted to argue that the "incidents" and recalls cited by Syson in The Exhibits were not "substantially similar" to the facts surrounding Plaintiffs' accident. (Dkt. No. 76 at 5-9).

The Court rejects the above arguments. To the extent Defendant argues Syson's report should be excluded because Plaintiffs have not produced The Exhibits, the Court rejects the argument as moot. To the extent that Defendant challenges, in general terms, the data contained within The Exhibits, such an argument goes to the "weight and credibility of the witness assessment, not its admissibility." *Bresler*, 855 F.3d at 195 (internal quotation marks omitted); *see Mcgarity v. FM Carriers, Inc.*, No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*."); *see also Buckman v. Bombardier*, 893 F. Supp. 547, 552 (E.D.N.C. 1995) (considering the question of "substantial similarity" not in the context of a *Daubert* motion but in the context of a motion *in limine* and specifically regarding the *admission into evidence* of "of other accidents" allegedly similar to those of plaintiffs' in order to show a particular defect caused the accident at issue); *Watson v. Ford Motor Co.*, 389 S.C. 434, 453 (2010) (noting "[e]vidence of similar accidents . . .

is *admissible* in South Carolina where there is some special relation between the accidents tending to prove or disprove some fact in dispute") (emphasis added).

For the above reasons, Defendant's motion is <u>denied</u> on this point.

Third, Defendant argues that Syson offers "opinions on defects which are not alleged to be the cause of the fire in this case." (Dkt. No. 40 at 7). The Court presumes that Defendant is arguing that part of Syson's report is irrelevant. *See* Fed. R. Evid. 702(a).  Specifically, Defendant argues that while "inadequately designed quick-release fuel vent line connections" and an "inadequately designed evaporative emissions canister" are alleged in the operative complaint to have caused or contributed to Plaintiffs' accident, two other "defects" ("fuel pump corrosion" and "inadequate fuel line material") discussed by Syson are not.  Plaintiffs, citing to the plain text of their operative complaint, reject the argument as meritless. (Dkt. No. 63-1 at 12-13) (noting the complaint alleges "[t]he EVAP *canister* and its *component lines and fittings*, the fuel lines and their component fittings, and the *fuel pump module* and its *component supply hose and fittings* were exposed and vulnerable to *corrosion*, *deterioration* and fire damage, and to damage from road debris when the Subject Vehicle was traveling on a roadway. More likely than not—indeed, it is highly probable— that these vulnerabilities, which were defects in the fuel system, individually and/or in combination with each other, allowed gas and/or gas vapors to escape the fuel system and ignite a fire that engulfed the truck and cause the Plaintiffs' injuries") (citing (Dkt. No. 26 ¶ 46) (emphasis added)).

The Court finds that Syson's report does not offer opinions on defects "not alleged to be the cause of the fire in this case."  As shown above, the operative complaint clearly alleges that corrosion of the fuel line and fuel pump are alleged to have caused Plaintiffs' accident.

For the above reasons, the Court <u>denies</u> Defendant's motion on this point.

Fourth, Defendant seeks to exclude Syson's opinions as they regard allegedly "defective warnings" on Defendant's part. (Dkt. No. 40 at 8-9).  Defendant argues that this testimony is irrelevant because the testimony of both Atanassova and Pendergast show neither individual consulted the 2007 Silverado's Owners Manual, Warranty Booklet or Maintenance Schedule, or Service Manual. *See* (Dkt. Nos. 43-3) (deposition of Pendergast stating he did not review the 2007 Silverado's owner's manual or service checklist); *see also* (Dkt. No. 43-4) (deposition of Atanassova stating she did not review the above cited material).  In sum, argues Defendant, because a different warning would not have affected the outcome of the accident, expert testimony about adequate warnings should be excluded.  Plaintiffs, for their part, do not substantively contest that neither Pendergast nor Atanassova neither read nor saw the 2007 Silverado's owner's manual or service checklist.  Instead, Plaintiffs argue that the Court should reject Defendant's argument because, "This is a *Daubert* motion and challenges to experts do not use the same standard of review as that for summary judgments. . . . GM has lapsed into its MSJ arguments here and digressed from its *Daubert* challenge. That is inappropriate for an expert challenge." (Dkt. No. 63-1 at 13-14).

The Court finds that those portions of Syson's report concerning the alleged inadequacy of warnings accompanying Plaintiffs' vehicle must be excluded as they are irrelevant.  As discussed *supra*, the Court grants summary judgment to Defendant on Plaintiffs' failure to warn claim. Accordingly, expert testimony on the subject is no longer relevant to a fact at issue in this case. *See* Fed. R. Civ. P. 702(b) (noting an expert's "scientific, technical, or other specialized knowledge [must] help the trier of fact to understand . . . a fact in issue"); *see also Burns*, 2018 WL 3575930, at *5 ("To survive summary judgment, even if she has shown that the warning was inadequate,

[plaintiff] must show that a different, adequate warning would have changed the outcome in the case.").

For the above reasons, Defendant's motion is <u>granted</u> to the extent that it seeks to exclude Syson's opinions on the adequacy of the 2007 Silverado's warnings.

Fifth, Defendant attacks Syson's report on the basis that it attempts to "burden manufactures" with "impossible standards." (Dkt. No. 40 at 9). Defendant takes issue with the following sentence from Syson's report: "GM, given the incidence of underbody fires (and fuel leaks that, fortunately did not result in fires) with its vehicles, should have redesigned the vehicles *to avoid adding fuel to an existing fire.*" (Dkt. No. 40-1 at 9) (emphasis added). Defendant then argues that because Syson's report fails to "proffer a feasible alternative design" and fails to include a "risk-utility" evaluation, it is "unreliable" and must be excluded in whole. For their part, Plaintiffs contend that Defendant is, at best, taking issue with Syson's conclusions and, at worst, misrepresenting Syson's report. Specifically, Plaintiffs note that immediately after the sentence Defendant objects to Syson states, "GM historically used metal containers for all flammable fluids. GM has taken the position in collision-related fuel-fed fire cases that these fluids have fed the fire." (*Id.*).

The Court declines to exclude Syson's report on the basis that Syson is attempting to hold Defendant to an "impossible standard." Contrary to Defendant's contention, Syson's report does discuss alternative designs. Further, that the report does not explicitly contain a risk-utility analysis is inapposite for purposes of *Daubert*. *See Funderburk v. South Carolina Elec. & Gas Co.*, 395 F. Supp. 695, 712 (D.S.C. 2019) (declining to exclude expert report on the basis that it did not include a "cost-benefit" analysis because "such a deficiency does not bear on the admissibility or relevancy of his opinion for purposes of *Daubert*"); *Branham*, 390 S.C. at 225

n.16 ("The analysis asks the *trier of fact* to determine whether the potential increased price of the product (if any), the potential decrease in the functioning (or utility) of the product (if any), and the potential increase in other safety concerns (if any) associated with the proffered alternative design are worth the benefits that will inhere in the proposed alternative design.") (emphasis added).

For the above reasons, Defendant's motion is <u>denied</u> on this point.

Sixth, Defendant accuses Syson's report of being wholly "unreliable" because two of Syson's opinions are allegedly "contradictory." At one point in his report, Syson states:

> GM historically used metal containers for all flammable liquids. GM has taken the position in collision-related fuel-fed fires cases that these fluids have fed the fire. It is gross negligence for General Motors to have replaced metal containers with plastic ones, without assessing the fire-related consequences. The Silverado emissions canister and fuel tank are typical examples of this dangerous practice.

(Dkt. No. 40-1 at 9). Syson later states:

> Further, it would have been feasible for GM to utilize a different material in the fuel pump such as stainless steel for the entire module that would have prevented corrosion in the mounting area. Many current GM vehicles also use plastic fuel pump modules, which are less expensive and more corrosion resistant than stainless steel. . . . Many of the after-market fuel pump module replacements for the 2007 Silverado now use stainless steel or plastic to reduce corrosion.

(*Id.* at 12). Defendant seeks to exclude Syson's entire report on the basis of the alleged "contradiction" these statements present.

The Court declines to dismiss Syson's report on the above basis. As Plaintiffs explain, the above observations do not represent a fundamental "contradiction" inherent to Syson's report. Namely, "If there is no leak from any of the locations that [Syson] suggested have failed in other GM vehicles, then the risk of a large conflagration is drastically reduced. [Syson] mentioned both plastic and stainless steel as possible alternative materials for the *fuel pump module* in the second paragraph of page 11 of [the] report, which is not inconsistent with [the] opinions on page 8,

paragraph E because, if there is no fuel leak, then the issue of flammable containers for the remaining combustibles is moot." (Dkt. No. 63-1 at 16) (quoting Syson Declaration, (Dkt. No. 63-2)).

For the above reasons, Defendant's motion is <u>denied</u> on this point.

Seventh, Defendant argues that Syson's report must be excluded because his "proffered underbody shielding [testimony] is merely conceptual and does not constitute evidence of a feasible alternative design." (Dkt. No. 40 at 11). Specifically, Defendant argues that while Syson opines that Defendant should have included a shield underneath the 2007 Silverado to cure the design defects he alleges existed, Syson fails to include "any drawings or schematics" in-fact describing such a shield. Accordingly, concludes Defendant, Syson's proffered testimony is merely "theoretical or conceptual" and is not evidence of an actual feasible design alternative models. *See Estate of Ravenell ex rel. Ravenell v. Pugmill Sys., Inc.*, No. 2:13-CV-00815-PMD, 2014 WL 7146848, at *9 (D.S.C. Dec. 15, 2014) (finding expert's testimony unreliable where report did not include "a reasonable alternative design for his proposed interlock system or . . . otherwise subject his theory to testing of any kind" or include "a prototype of his proposals . . .[or] reduce[] his conceptual ideas or suggestions to design drawings").

The Court rejects Defendant's argument. As Plaintiffs note, in his report Syson specifically describes other vehicles manufactured by Defendant which contained shields like the one Syson opines the 2007 Silverado should have featured. And further, because Defendant itself has used such a device in prior models of Plaintiffs' vehicle, as well as other vehicles, a reliable basis exists for Syson's opinions. *See Wickersham v. Ford Motor Co.*, 194 F. Supp. 3d 434, 439 (D.S.C. 2016) (rejecting a similar argument by the defendant and noting that "[t]he fact that this approach was

used in the past [by other manufacturers] certainly suggests that it is feasible from a cost, safety, and functional perspective").

For the above reasons, Defendant's motion is <u>denied</u> on this point.

Eight and lastly, Defendant argues Syson impermissibly offers legal opinions. In his report, Syson opines that, "[f]ailing to conduct these types of engineering analysis on each and every safety system is *negligent*." (Dkt. No. 40-1 at 9) (emphasis added). Syson also states that "[i]t is *gross negligence* for General Motors to have replaced metal containers with plastic ones." (*Id*.) (emphasis added). Defendant argues that these statements are impermissible legal opinions by an expert and must be excluded. Plaintiffs do not dispute that Syson may not testify to the jury that Defendant is "negligent or grossly negligent." (Dkt. No. 63-1 at 19) (noting that while Syson "may not use those terms before a jury, the underlying basis for those opinions is sound").

The Court grants Defendant's motion to the extent that Syson may not opine to the jury as to whether Defendant's actions constitute "negligence" or "gross negligence." *See Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 486 (D.S.C. 1993) (excluding proffered testimony of expert that party was "negligent" and concluding "that testimony by a witness in the form of a legal conclusion is clearly inadmissible") (citing and quoting *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986)).

For the above reasons, Defendant's motion is <u>granted</u> on this point.

To summarize, the Court <u>grants</u> Defendant's motion to exclude the opinions of Mr. Stephen R. Syson (Dkt. No. 40) <u>only</u> as it relates to (a) an alleged failure to warm and (b) only to the extent that Syson may not testify to the jury that Defendant's actions constitute "gross negligence" or "negligence." Defendant's motion is otherwise <u>denied</u>.

b.    Dr. Lila Laux

Plaintiffs have disclosed Dr. Lila Laux as a "human factors" expert to opine on the adequacy of the warnings accompanying the 2007 Silverado. Defendant does not dispute Dr. Laux's qualifications as a "human factors" expert. Defendant raises three points, however, as it regards Dr. Laux's expert report. Defendant argues that (1) Dr. Laux's warnings opinions fail to offer an alternative warning which would have changed the outcome in this case and are at bottom irrelevant; (2) Dr. Laux's "other similar incident" opinions are the product of irrelevant and unreliable evidence; and (3) Dr. Laux's product design opinions relate to fields for which she is unqualified. Because the Court finds Dr. Laux's expert report irrelevant to this case, the Court addresses only Defendant's first argument.

Defendant argues that Dr. Laux's report, which opines on the adequacy of the 2007 Silverado's warnings, is irrelevant to the facts at issue in this case and should be excluded on that basis. Plaintiffs oppose this argument for the same reasons described above regarding the testimony of Syson on the same subject matter.

The Court excludes Dr. Laux's testimony. As explained *supra*, given Atanassova and Pendergast's deposition testimonies, Laux's expert report and testimony is irrelevant to this case. *See* Fed. R. Civ. P. 702(b) (noting an expert's "scientific, technical, or other specialized knowledge [must] help the trier of fact to understand . . . a fact in issue"). Specifically, because neither Atanassova nor Pendergast attempted to review the vehicle's owner's manual or service documents, the adequacy of warnings accompanying the 2007 Silverado are no longer at issue. *See Thompson v. U.S.*, No. 7:14-cv-00092, 2015 WL 2412249, at *10 (W.D. Va. May 21, 2015) (considering a motion to exclude an expert on grounds of relevancy pursuant to Fed. R. Evid. 401, 402, and 702 but declining to do so at the time due to an incomplete record).

-16-

For the above reasons, the Court <u>grants</u> Defendant's motion to exclude the opinions of Dr. Lila Laux. (Dkt. No. 41).

c.    *Dr. Steven A. Kahn & Dr. Kenneth Boudreaux*

Defendant next moves to exclude certain opinions of Plaintiffs' burn surgeon expert Dr. Steven A. Kahn and certain opinions of Plaintiffs' economic expert Dr. Kenneth Boudreaux. Defendant challenges Dr. Kahn's qualifications in so far as Dr. Kahn attempts to render expert opinions regarding the length and cost of future mental health treatment and medication for Atanassova. Specifically, Defendant argues that Dr. Kahn is not qualified to offer opinions regarding mental health and that Dr. Kahn's projections regarding mental health treatment for Atanassova are not supported by qualified medical evidence. Relatedly, Defendant seeks to exclude Dr. Boudreaux's testimony in so far as it relies on Dr. Kahn's opinions regarding the length and cost of Atanassova's future mental health treatment and medication.

The Court first examines Dr. Kahn's qualifications.

Dr. Kahn is Chief of Burn Surgery and the Medical Director of the MUSC Burn Center. (Dkt. No. 42-1 at 2). Dr. Kahn graduated from medical school in May 2006 and has been in training or active practice ever since. After completing two years as a surgical resident, Dr. Kahn completed a two-year long research fellowship in "thermal injur[ies]." Dr. Kahn then completed two clinical fellowships, one in "Surgical Critical Care" and the other in the capacity as an "instructor in Surgery/Acute Care Surgery and Burn[s]." (*Id.*). Dr. Kahn has published over fifty peer reviewed articles, most of which concern burn treatment. (*Id.* at 8-11). To date, Dr. Kahn has cared for over 2000 burn inpatients and nearly 4,000 burn outpatients. (Dkt. No. 42-2 at 4). In his expert report, Dr. Kahn discusses in detail, and with citation to various medical sources, that "the psychological scars that occur from burn injury often cause the greatest impairment and distress"

to burn victims. (*Id.* at 12).  And in a declaration filed in opposition to Defendant's motion, Dr.

Kahn states:

> Surgery is only a small part of the care that I provide to these patients. Post burn injury psychologic impairment is very common, and managing it is an important part of treating the entire patient and achieving true recovery. I received training during my fellowship to understand and recognize the common disorders that burn patients develop, and have studied the literature closely. In addition, I have traveled to several other major burn centers, where I met with their burn-specific psychologists to learn how they approach care of the thermally injured patient. It is the responsibility of the burn surgeon to be able to recognize symptoms of psychologic disorders and ensure (and sometimes provide) treatment.

(Dkt. No. 62-2 ¶ 4). Dr. Kahn continues that up to two-thirds of burn patients suffer PTSD or

another psychological injury and that Dr. Kahn has diagnosed and treated these conditions. (*Id.* ¶

5).

Based on his knowledge, skills, education and experience, the Court finds that Dr. Kahn is

easily qualified to offer opinions on mental health issues in burn victims.  As described above,

treating the psychological aspect of burns is important to much of Dr. Kahn's work and Dr. Kahn

has in fact treated patients for the very injuries Atanassova allegedly suffered because of the

accident.  The Court denies Defendant's motion in so far as it seeks to disqualify Dr. Kahn from

opining on mental health issues in burn victims.  *See Schaeffer v. Heidi D. Williams, MD, LLC*,

No. 2:18-CV-1532-DCN, 2020 WL 833017, at *2 (D.S.C. Feb. 20, 2020) ("One knowledgeable

about a particular subject need not be precisely informed about all details of the issues raised in

order to offer an opinion.") (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799

(4th Cir. 1989)); *see also Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t

is an abuse of discretion to exclude testimony simply because the trial court does not deem the

proposed expert to be the best qualified or because the proposed expert does not have the

specialization that the court considers most appropriate.").

Defendant next argues that Dr. Kahn's projections for Atanassova's future medical health needs are not supported by qualified medical evidence and are little more than the product of his *ipse dixit*. Defendant notes that Plaintiffs retained Dr. Gordon Teichner as Plaintiffs' psychological expert. Defendant notes that Dr. Teichner interviewed Atanassova for 4.5 hours and administered various psychological tests to her. (Dkt. No. 42 at 5). Defendant points out that Dr. Teichner concluded that Atanassova would need 12-18 months of medication and 20-30 sessions of psychological treatment. (*Id.*). In contrast, argues Defendant, Dr. Kahn——without performing the same tests at Dr. Teichner—opined that Atanssova would need 30 years of monthly psychology or psychiatry visits ($136,440.00) and 30 years of medication ($196,844.40). Ergo, concludes Defendant, because Dr. Kahn did not perform the same psychological tests as Dr. Teichner, and because Dr. Kahn's figures are a "far cry" than those of Dr. Teichner, Dr. Kahn's opinion must be the product of "nothing more than [his] *ipse dixit*." To support its arguments, Defendant also notes that at one point in his report Dr. Kahn states that he "will defer to a psychologist or psychiatrist to quantify or elaborate on" Atanassova's "future psychological impairment." (Dkt. No. 42-2 at 12).

The Court rejects Defendant's arguments. As noted above, diagnosing and, to some extent treating, the psychological aspects of burn injuries are important to Dr. Kahn's practice. Dr. Kahn's report makes clear he is familiar with Atanassova's medical records. Additionally, Dr. Kahn's report cites six articles that explicitly concern the psychological aspects of burn pain. The above provides sufficient support to show Dr. Kahn's report is based on reliable medical evidence and a sufficient methodology. *See Mizrahi v. Yamaha Motor Corp., U.S.A.*, No. 17-24484-CIV, 2019 WL 3318527, at *12 (S.D. Fla. July 19, 2019), *aff'd sub nom. Mizrahi v. Yamaha Motor Corp.*, No. 17-24484-CIV, 2019 WL 3315142 (S.D. Fla. July 23, 2019) (denying defendant's

*Daubert* motion and permitting plaintiff's medical doctor to testify to patient's future psychological treatment even though psychology was not his specialty, noting "Dr. Lichtblau provides sufficient support in establishing his opinion that plaintiff will require continued psychological treatment in the future. First, he relies on the Plaintiff's history of multiple hospitalizations, chronic pain, permanent scarring, suicide attempts, bullying at school, complaints of anxiety and depression, nightmares and insomnia. Second, putting aside the fact that Dr. Lichtblau is actually a psychiatrist himself, he has extensive experience treating patients with chronic pain and he even cites to six peer-reviewed articles attached to his Report that support the premise that those who suffer from chronic pain also suffer from depression.") (internal citations omitted). As in *Mizrahi*, Defendant's argument "go[es] more to the weight of Dr. [Kahn's] opinion . . . than its admissibility." *Id.*

For the above reasons, Defendant's motion is <u>denied</u> on this point.

To summarize, Defendant's motion to exclude the testimony and opinions of Dr. Steven A. Kahn, (Dkt. No. 42), is <u>denied</u>.

Further, because Defendant's motion to limit the testimony of Dr. Boudreaux is based entirely on the premise that Dr. Boudreaux wrongfully reliefs on the opinions of Dr. Kahn discussed immediately above—opinions which this Court has declined to exclude—the Court <u>denies</u> Defendant's motion to exclude the testimony and opinions of Dr. Boudreaux. (Dkt. No. 44).

## IV.   <u>Conclusion</u>

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 45) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiffs' (a) manufacturing defect and (b) failure to warn claims. The motion is otherwise **DENIED**. Defendant's motion to exclude the testimony of Mr. Stephen R. Syson (Dkt. No. 40) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted only to the extent that

Syson (a) may not testify as to an alleged failure to warn on Defendant's part and (b) may not explicitly testify that Defendant's actions constitute "negligence" or "gross negligence." The motion is otherwise **DENIED**.  Defendant's motion to exclude the testimony of Dr. Lila Laux (Dkt. No. 41) is **GRANTED**.   And Defendant's motions to exclude the testimonies of Drs. Steven A. Kahn and Kenneth Boudreaux (Dkt. Nos. 42, 44) are **DENIED.**

      **AND IT IS SO ORDERED.**

<u>s/ Richard Mark Gergel</u>
United States District Court Judge

February 22, 2021
Charleston, South Carolina