IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alexandrina Atanassova and David Pendergast, individually and as parents and natural guardians of S.P., a minor,<br><br>*Plaintiffs*,<br><br>v.<br><br>General Motors LLC,<br><br>*Defendant*. | Civil Action No. 2:20-cv-01728-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant's motion in limine No. 5 for adverse inferences based on the spoliation of the 2007 Silverado (Dkt. No. 153). For the reasons set forth below, the Court denies the motion.

**Background**

This is a products liability case arising out of a fuel-fed fire that consumed the Plaintiffs' 2007 Silverado C1500 crew cab truck (the "2007 Silverado"). Plaintiffs allege that the vehicle fire was not precipitated by a collision. Plaintiffs allege the fire originated in the undercarriage area where the subject vehicle's fuel storage tank and its fuel supply components—including an "EVAP Canister"—were located. Plaintiffs allege that the EVAP Canister was unprotected from road debris, such as rocks and pebbles, and may have been struck by such debris, precipitating the fire that consumed the 2007 Silverado. Plaintiffs Alexandrina Atanassova and David Pendergast were allegedly injured in the fire, as was their then 3-year-old daughter S.P, who suffered second and third degree burns to 25% of her body.

On March 14, 2023, Defendant moved for adverse inferences based on alleged spoliation of the 2007 Silverado. (Dkt. No. 153). Defendant argues that after Plaintiffs' accident, Plaintiffs

1

engaged their current counsel—Leger Ketchum and Cohoon PLLC—and stored the 2007 Silverado at Lawson's Service Center in Summerton, South Carolina. (*Id.* at 4). Defendant contends Plaintiffs stored the 2007 Silverado uncovered in a field for over two years. (*Id.* at 4-5). Then, in July 2020, Defendant alleges Plaintiff used an industrial tractor with forks attached to lift the remains of the 2007 Silverado onto a flatbed car carrier to haul the vehicle to Texas for storage. (*Id.* at 6). Defendant states that from the "date of the incident until the vehicle reached Texas over two years later, Plaintiffs never provided GM LLC notice of the location of the vehicle or how it was being stored, moved, and handled. GM LLC's first inspection of the vehicle was not until the vehicle was already at its second Texas location in Houston." (*Id.*).

As to spoliation of the 2007 Silverado, Defendant first implies that the "exhaust system routing" of the 2007 Silverado was damaged while the vehicle sat in the field at Lawson's. (*Id.* at 7-8). Second, Defendant implies that an in-tank fuel pump mount—a part Plaintiffs' expert Stephen Syson testified would be expected to outlast a fire because it was made from stainless steel—was either lost by Plaintiffs immediately after the fire that consumed the 2007 Silverado, stolen from Lawson's or destroyed by the elements. (*Id.* at 5); (Dkt. No. 153-6 at 5). Defendant argues this is significant because Syson opined that other incidents of fire in GM vehicles can be "traced to . . . in-tank fuel pump mount Corrosion." (Dkt. No. 153 at 8). Third and last, Defendant argues that the steel bracket which attaches the EVAP Canister to the vehicle's frame was damaged by the forklifts which moved the 2007 Silverado from South Carolina to Texas. (Dkt. No. 153 at 7). Defendant argues this is significant because Plaintiffs' experts point to the "purported slight bending" of part of the bracket as evidence of the road debris strike that precipitated the fire.

On March 23, 2023, Plaintiffs filed a response in opposition. (Dkt. No. 176). Plaintiffs argue that Defendant's motion is untimely, that Defendant has not met its burden of showing an

2

adverse inference is proper in this case, and that Defendant has not shown Plaintiffs in fact spoliated any evidence.

Defendant's motion is fully briefed and ripe for disposition

### **Legal Standard**

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its "inherent power ... to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)); *see also Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); *CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 498 (S.D.N.Y. 2016). Courts have broad discretion when deciding whether to impose spoliation sanctions. *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013).

"[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (internal quotations omitted). Appropriate purposes include: "'(1) deter[ring] parties from engaging in spoliation; (2) plac[ing] the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restor[ing] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Eshelman v. Puma Biotechnology*, Inc., No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (describing similar goals).

A party bringing a motion for sanction based on spoliation bears the burden of establishing

3

three independent elements before the court may determine which sanction, if any, is appropriate. The party must show: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Zajac v. Red Wing, LLC*, No. 2:16-CV-1856-PMD, 2018 WL 9989661, at *3 (D.S.C. July 16, 2018). While the burden of proof on a motion for spoliation sanctions is unsettled, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324 (RCY), 2022 WL 853626, at *3 (E.D. Va. Mar. 22, 2022) (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) (explaining that some courts a "preponderance of the evidence standard")).[1]

## Discussion

Plaintiffs argue that Defendant's motion for spoliation is untimely. Discovery closed on January 2, 2021 and Plaintiffs note that they provided Defendant photos taken by their expert Michael Schulz—photos on which Defendant bases its motion—prior to December 18, 2020, the date of the report of Defendant's expert Jon Olson. (Dkt. No. 176 at 5); Olson Report, (Dkt. No. 47-2 at 6) (dated December 18, 2020 and referencing Schulz's photos). Plaintiffs note that they provided Defendant photos depicting the moving of the 2007 Silverado, shown on page 6 of Defendant's motion, on February 1, 2021, (Dkt. No. 176 at 5); (Dkt. No. 176-1) (email providing photos), and that Defendant has had Plaintiffs' expert reports since November 2020, *see* (Dkt. No.

---

[1] For the reasons stated below, Defendant's motion fails even under the less burdensome standard of a preponderance of the evidence.

32). Plaintiffs further explain that their experts Hannemann and Hille included photos of the canister bracket along with measurements of the degree of deformation in their October 31, 2020 report. (Dkt. No. 74-3 at 6). Last, Plaintiffs observe that Defendant's expert Jon Olson inspected the 2007 Silverado on December 10, 2020. (Dkt. No. 46-2 at 9).

Federal Rule of Civil Procedure 37 governs most motions for discovery sanctions but it does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions. *See McEachron v. Glans,* No. 98–CV–17(LEK/DRH), 1999 WL 33601543, at *2 (N.D.N.Y. June 8, 1999). Courts considering this issue have identified several factors that can be used to assess the timeliness of spoliation motions. First, "[k]ey to the discretionary timeliness assessment of lower courts is how long after the close of discovery the relevant spoliation motion has been made...." *See, e.g., id.* at *2 & n. 3 (holding spoliation motion made two weeks after the close of discovery was timely); *id.* at *2 (citing *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 886 (S.D.N.Y.1999) (finding motion for spoliation sanctions filed two months after conclusion of discovery was timely, as it was "not brought well after the close of discovery ... nor after the start of trial")). Second, a court should examine the temporal proximity between a spoliation motion and motions for summary judgment. *See, e.g., id.* (citing *Glenn v. Scott Paper Co.,* Civ. A. No. 92–1873, 1993 WL 431161, at *17 n. 3 (D.N.J. Oct. 20, 1993) (spoliation argument used to defend a summary judgment motion was untimely, as the plaintiff did not raise any concerns "during the discovery phase or bring them to the attention of the magistrate [judge]")); *Morse Diesel Int'l, Inc. v. United States,* 81 Fed.Cl. 220, 222 (2008) (plaintiff's spoliation motion, which was filed *after* the court ruled on the plaintiff's motion for partial summary judgment, was held to be untimely); *Ferrone v. Onorato,* No. 05–303, 2007 WL 2973684, at *10 (W.D.Pa. Oct. 9, 2007) (spoliation argument should have been made in

"appropriate discovery motion," and not in "opposition to summary judgment [motion]"). *But see, e.g., McDonald v. Wal–Mart Stores East, LP,* No. 3:07cv425, 2008 WL 153783, at *1 & n. 1 (E.D.Va. Jan. 14, 2008) (granting plaintiff's request to file untimely summary judgment motion *nunc pro tunc* because spoliation argument contained in the motion was present in earlier motion *in limine,* and "[c]reating a clear record benefits both parties"). Third, courts should be wary of any spoliation motion made on the eve of trial. *See, e.g., Permasteelisa CS Corp. v. Airolite Co., LLC,* No. 2:06–cv–569, 2008 WL 2491747, at *2–3 (S.D. Ohio June 18, 2008) (spoliation motion filed one week before trial was held to be untimely); *Shamis,* 34 F.Supp.2d at 886. Fourth, courts should consider whether there was any governing deadline for filing spoliation motions in the scheduling order issued pursuant to Fed. R. Civ. P. 16(b) or by local rule. Finally, the explanation of the moving party as to why the motion was not filed earlier should be considered. *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009)

"The lesson to be learned from the cases that have sought to define when a spoliation motion should be filed in order to be timely is that there is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman*, 632 F. Supp. 2d at 508 (analyzing the timeliness of a motion for spoliation pursuant to the court's inherent powers under the above factors).

The Court finds that Defendant's motion is untimely. The first factor weighs in favor of Plaintiffs as the instant motion was filed March 14, 2023, over two years after the close of discovery. The second and third factors also weigh in favor of Plaintiffs as Defendant's motion was filed over two years after summary judgment briefing *and* on the eve of trial. *Id.* at 507 (noting "courts should be wary of any spoliation motion made on the eve of trial"). Last, as to factor five, the Court finds that Defendant has failed to provide any explanation for its eleventh-hour motion

for spoliation. *See generally* (Dkt. No. 153).² Defendant does not explain why, for example, despite having in 2021 knowledge of the way the 2007 Silverado was transported or photos of the condition under which the 2007 Silverado was stored, it waited until the month before trial to file the instant motion. To this point, the Court is "struck by the fact that the absence of the disputed evidence appears to have [had] no impact on" Defendant's experts' reports. *See Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-CV-07959, 2018 WL 1370862, at *6 (S.D.W. Va. Mar. 16, 2018) ("Presumably frustrated by a lack of evidence to support its claims and defenses in the days winding down to trial, Mountaineer accused Traveler's of destroying relevant evidence, the destruction of which was known to it nearly four years prior to the filing of its motion. Whether the delay is the result of inattention, neglect, or purposeful intent, the court does not know—but the timing of Mountaineer's Motion undermines its claim for relief."); *Id.* at *21 (denying motion for spoliation where expert filed supplemental report raising the "specter of spoliation" but admitted at his subsequent deposition that he was always aware of purportedly missing evidence, aware certain evidence had been moved from one storage location to another, and aware he made "no reference in [his] initial report to [his] alleged inability to render an opinion . . . because of the way the evidence was handled"); (Dkt. No. 153 at 11) (failing to articulate how Plaintiffs' alleged spoliation prejudiced Defendant).

Accordingly, for the above reasons, Defendant's motion is denied as untimely.

Nevertheless, even if the Court were to reach the merits of Defendant's motion, the motion would still be denied.

First, Defendant argues in only vague terms about purported damage to the "exhaust system

---

² The District of South Carolina does not a have a local rule addressing motions for spoliation, thus factor four is irrelevant.

routing" of the 2007 Silverado while it was stored at Lawson's. (Dkt. No. 153 at 7-8). Defendant does not articulate precisely what it believes happened to the exhaust system routing components while the 2007 Silverado remained at Lawson's nor even *which parts* of the system were damaged. *See* (*id.*). The Court denies the motion on this point. Defendant has not met its burden of establishing any spoliation occurred because it fails to articulate *what* components were allegedly damaged by Plaintiffs' actions. Relatedly, Defendant does not clearly articulate how specific any "evidence [allegedly destroyed is] relevant to [its] claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zajac*, 2018 WL 9989661, at *3. In sum, Defendant articulate no prejudice suffered by the alleged spoliation. *Johns v. Gwinn*, 503 F. Supp. 3d 452, 470 (W.D. Va. 2020) ("Even after finding that spoliation occurred . . . a court may not impose sanctions remedying the spoliation without first finding that the moving party was actually prejudiced by the spoliation.").[3]

Accordingly, Defendant's motion is denied on this point.

Second, as to the damage Defendant alleges a forklift caused to the steel bracket which attaches the EVAP Canister to the vehicle's frame, the Court denies Defendant's motion. On a fundamental level, the Court finds that Defendant has not put forward evidence showing there was

---

[3] To attempt to articulate Defendant's argument on this point is to refute it. As best the Court can understand, Defendant's expert Modi opined that the exhaust pipes on the 2007 Silverado were placed such that that they rested on and damaged the rear axle. (Dkt. No. 153 at 7-8). Plaintiffs' experts, for their part, disagree the pipes rested on the axle and claim that Modi's calculations are not based on the actual location of the exhaust pipes at the time of the accident. (*Id.*). Thus, Defendant implies, because Defendant only inspected the 2007 Silverado after it sat two years in a field, it is *possible* someone (a vandal or a scavenger) or something (the elements) modified the exhaust system routing in some unknown way such that Defendant's case is prejudiced in a manner so prejudicial it need not even articulate it. (*Id.* at 8). A closer reading of its motion reveals, however, that Defendant likely struggles to articulate its prejudice because none exists—in its motion, Defendant cites the testimony of its own expert who apparently had no trouble opining on the cause of the fire in the 2007 Silverado despite the alleged spoliation. *See* (*id.* at 7-8).

any spoliation of the steel bracket in the first place. *See* (Dkt. No. 176 at 10). Defendant, citing its expert's report, attributes any damage to the steel bracket to Plaintiffs' moving the 2007 Silverado. (Dkt. No. 253 at 7) (citing Modi Report, (Dkt. No. 46-11 at 20, 26-27)). For the Court to find that Defendant's contention is correct, however, the Court would have to engage in fact finding and determine Modi's testimony is more credible than that of Plaintiffs' own experts, who argue road debris damaged the steel bracket in question. *See* (Dkt. No. 46-11 at 26-27) (noting that Hille and Hannemann "rely on the miniscule angle difference of the vapor canister bracket" to reach their conclusions but that Modi believes the "angle difference likely happened while the subject vehicle was attempted or lifted by the fork-lift from the side and/or during transport of the subject vehicle"). At bottom, Defendant's argument that Plaintiffs damaged the steel bracket while moving the 2007 Silverado is a back door attempt to have the Court, through the guise of "spoliation," usurp the role of the jury in determining the cause of Plaintiffs' accident. *See Kerrigan v. Maxon Indus.*, 223 F. Supp. 2d 626, 642 (E.D. Pa. 2002) (declining to exclude evidence on spoliation grounds where material dispute existed as to whether spoliation actually occurred).

Accordingly, Defendant's motion is denied on this point.

Third and last, the Court denies Defendant's motion as to the in-tank fuel pump mount. Defendant argues that because certain components of the in-tank fuel pump mount made of stainless steel were not found among the remnants of the 2007 Silverado, Plaintiffs *necessarily* spoliated the in-tank fuel pump because Plaintiffs stored the vehicle in a field two years. *See* (Dkt. No. 153 at 11-13). Again, the Court finds that Defendant has not met its burden of showing Plaintiffs spoliated the parts in question. As Plaintiffs note, Defendant "provided no evidence that the fuel pump should have been with the truck because the fuel pump was seated on the top side of the plastic fuel tank and any parts of it that survived the fire would have fallen to the ground

after the fuel tank was consumed by the fire." (Dkt. No. 176 at 12). Additionally, it is questionable Plaintiffs even had control over the remnants of the 2007 Silverado right after the fire. Plaintiffs have put forth evidence that local authorities—not Plaintiffs—were responsible for moving the 2007 Silverado to Lawson's for storage and for cleaning debris after the fire that precipitated this lawsuit on June 17, 2018. (Dkt. No. 176 at 9-10, 13); (Dkt. No. 176-2 at 1-2) (report from Clarendon County Fire Department noting that "Wrecker service was notified. Once the vehicle was removed, the *Fire Department* cleared the scene") (emphasis added). And finally, beyond one conclusory statement, (Dkt. No. 153 at 13) ("As a product of Plaintiffs' actions, the 2007 Silverado's remains were irreparably compromised—to the significant prejudice of GM LLC's defenses."), Defendant again fails to articulate any specific prejudice the loss of fuel system components caused Defendant or its experts. *Johns*, 503 F. Supp. 3d at 470 ("Even after finding that spoliation occurred . . . a court may not impose sanctions remedying the spoliation without first finding that the moving party was actually prejudiced by the spoliation.").

Accordingly, Defendant's motion is denied on this final point.

## Conclusion

For the reasons stated above, the Court **DENIES** Defendant's motion in limine No. 5 for adverse inferences based on spoliation of the 2007 Silverado (Dkt. No. 153).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Judge

March 28, 2023
Charleston, South Carolina

10