IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alexandrina Atanassova and David Pendergast, individually and as parents and natural guardians of S.P., a minor,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>General Motors LLC,<br><br>   *Defendant*. | Civil Action No. 2:20-cv-01728-RMG<br><br><br>**ORDER AND OPINION** |

  Before the Court is Defendant's motion for sanctions based on Plaintiffs' spoliation of the 2007 Silverado's Evaporative Emissions Canister (Dkt. No. 146). For the reasons set forth below, the Court denies the motion.

## **Background**

  This is a products liability case arising out of a fuel-fed fire that consumed the Plaintiffs' 2007 Silverado C1500 crew cab truck (the "2007 Silverado"). Plaintiffs allege that the vehicle fire was not precipitated by a collision. Plaintiffs allege the fire originated in the undercarriage area where the subject vehicle's fuel storage tank and its fuel supply components—including an "EVAP Canister"—were located. Plaintiffs allege that the EVAP Canister was unprotected from road debris, such as rocks and pebbles, and may have been struck by such debris, precipitating the fire that consumed the 2007 Silverado. Plaintiffs Alexandrina Atanassova and David Pendergast were allegedly injured in the fire, as was their then 3-year-old daughter S.P, who suffered second and third degree burns to 25% of her body.

  On March 13, 2023, Defendant moved for sanctions for the alleged spoliation of the 2007 Silverado's EVAP Canister. (Dkt. No. 146). Defendant argues that after Plaintiffs' accident,

1

Plaintiffs engaged their current counsel—Leger Ketchum and Cohoon PLLC ("LKC")—and stored the 2007 Silverado at Lawson's Service Center in Summerton, South Carolina. (*Id.* at 5-6). Defendant argues that Plaintiffs' counsel then engaged fire cause-and-origin expert Michael Schulz who performed an inspection of the 2007 Silverado roughly two months after the fire. (*Id.*). Defendant argues that throughout this litigation Plaintiffs and their experts have maintained the 2007 Silverado's EVAP Canister was consumed in the fire. (*Id.* 6-7). Defendant contends, however, that while "GM's experts were preparing for trial and reviewing photographs taken by Mr. Schulz, remains of the [EVAP] canister were discovered among the earliest photos taken by Mr. Schulz in August 2018, during the first post-fire inspection." (*Id.* at 7). *Contra* Complaint, (Dkt. No. 1 at 16) (filed May 1, 2020, including a color photo of the 2007 Silverado depicting in plain view the contested melted remains and coil). Defendant argues one of Schulz's photos, (Dkt. No. 146 at 8), depicts "melted remains of a plastic component with coils resting atop the metal fuel tank shield that had repositioned itself across the tank straps." (*Id.*). Defendant argues that these "melted remains . . . with coils" are the remains of the EVAP Canister. (*Id.* at 8). Defendant claims that, unlike Plaintiffs, it has never been able to examine these "melted remains" or "coils." (*Id.* at 9). Defendant implies that Plaintiffs knowingly allowed the melted remains and coil to either be destroyed by the elements, stolen from Lawson's, or lost while transporting the 2007 Silverado from South Carolina to Texas. *See* (*id.* at 5-6). Defendant argues that dismissal of this action is the appropriate sanction for Plaintiffs' alleged spoliation. (*Id.* at 15-17). In the alternative, Defendants ask that the Court "exclude any evidence related to" the EVAP Canister. (*Id.* at 17-18).

On March 20, 2023, Plaintiffs filed a response in opposition. (Dkt. No. 165). Plaintiffs argue that there was no spoliation of the EVAP Canister. Plaintiffs argue that what Defendant

believes are the melted remains of the EVAP Canister are instead remnants of the plastic fuel tank lying on top of the metal fuel tank side shield. (Dkt. No. 165-1 at 3-4); (*Id.* at 5, 7, 9) (noting that the side shield has a distinctive "X" on it and showing melted remains containing debris with said X imprinted on them). Plaintiffs attach photos supported by testimony from their experts arguing to this effect. (*Id.* at 4-9) (attaching photo showing disputed remains are not located where EVAP canister normally sits). Plaintiffs explain that the EVAP Canister sits opposite the fuel tank, separated by a piece of metal, referred to as the canister mounting bracket. Plaintiffs argue that if the EVAP Canister, fuel tank, and 2007 Silverado "burned in a stationary and relatively level position on the side of the road, any black plastic remains from the EVAP canister would have simply melted and fallen down onto the road, not aft, over, or around the metal bracket." (*Id.* at 10-11, 18) (arguing that the EVAP Canister did not migrate horizontally to rest where Defendant claims it exists in Shultz's photos). Plaintiffs further note that their experts, when determining the cause of the fire that consumed the 2007 Silverado, did not rely on the remains of the EVAP Canister but rather "fire effects, burn patterns and other physical evidence." (*Id.* at 20) (noting that Schulz did not "rely on the Subject Vehicle's EVAP canister itself because it had been consumed entirely by the fire"); (*Id.* at 21) (arguing that "[e]ven if the melted blob of plastic on the fuel tank shield was from the EVAP canister as GM claims . . . it would have provided no relevant information to anyone as to the origin and cause of the fire. It would have provided no physical evidence to rule out the occurrence of any cracks caused by rocks or road debris striking the canister"). Plaintiffs do admit, however, that the coil observed in Schulz's photographs "could have been from the emissions canister" and do not seem to dispute that the melted mass of plastic and coil are missing or that Defendant has never had the chance to inspect them. (*Id.* at 12).

On March 23, 2023, Defendant filed its reply. (Dkt. No. 168). Therein Defendant

3

propounds theories for how the alleged remains of the EVAP Canister could have migrated to where Defendant believes they sit in Schulz's photographs. (*Id.* at 3-4). Further, for the first time in its briefing, Defendant articulates how it believes it has been prejudiced by not being able to inspect the purported remains of the EVAP Canister. (*Id.* at 6).

On March 23, 2023, the Court directed Plaintiffs to address the allegations of prejudice raised by Defendant in its reply. (Dkt. No. 168).

On March 28, 2023, Plaintiff filed their sur-reply. (Dkt. No. 193). In addition to addressing the new arguments raised in Defendant's reply, Plaintiffs detail the handling of the remains of the 2007 Silverado immediately after the incident that precipitated this lawsuit. Plaintiffs explain that after the June 27, 2018 fire, Plaintiffs' counsel LKC was, contrary to Defendant's contention otherwise, not immediately engaged by Plaintiffs. Affidavit of Rodney Castille, Esq., (Dkt. No. 193-3 at 1) (explaining that Defendant relies on an "Evidence Transmittal Form" signed on July 31, 2020 to infer LKC was engaged by Plaintiffs on June 27, 2018 and explaining that Castille prepared the Evidence Transmittal form in 2020 "for the purpose of documenting when Lawson's Towing received the Vehicle to establish the chain of custody"). Plaintiffs further argue that they were not in control of the remains of the 2007 Silverado immediately after the accident because, as the Clarendon County Fire Department report states, "EMS and Law Enforcement arrived on the scene. A landing zone was set up to transport patients by helicopter. Wrecker service was notified. Once the vehicle was removed, the Fire Department cleared the scene." (*Id.* at 2). Castille states that within two months of the accident he called Lawson's and requested that Lawson's put a tarp over and otherwise protect the truck. (*Id.*) (noting Castille requested indoor storage but that Lawson's stated it did not provide any for vehicles). Castille states that two years later in July 2020 he arranged with All Time Roadside Services to move the vehicle to a secured metal

4

container and that on July 31, 2020, All Time Roadside Services transported the vehicle to Hanahan, South Carolina and took photos and video "to show that they were not damaging or altering" the 2007 Silverado—material which was provided to Defendant on February 1, 2021. (*Id.*). Castille adds that the 2007 Silverado was transported to Houston on October 15, 2020 and that, since arriving in Houston, has been "stored in an enclosed and secure facility." (*Id.*).

Defendant's motion is fully briefed and ripe for disposition.

### **Legal Standard**

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its "inherent power ... to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)); *see also Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); *CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 498 (S.D.N.Y. 2016). Courts have broad discretion when deciding whether to impose spoliation sanctions. *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013).

However, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (internal quotations omitted). Appropriate purposes include: "'(1) deter[ring] parties from engaging in spoliation; (2) plac[ing] the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restor[ing] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Eshelman v. Puma Biotechnology*, Inc., No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (quoting *West v.*

5

*Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)); *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (describing similar goals).

A party bringing a motion for sanction based on spoliation bears the burden of establishing three independent elements before the court may determine which sanction, if any, is appropriate. The party must show: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Zajac v. Red Wing, LLC*, No. 2:16-CV-1856-PMD, 2018 WL 9989661, at *3 (D.S.C. July 16, 2018). While the burden of proof on a motion for spoliation sanctions is unsettled, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324 (RCY), 2022 WL 853626, at *3 (E.D. Va. Mar. 22, 2022) (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) (explaining that some courts apply a "preponderance of the evidence standard")).[1]

### Discussion[2]

In dispute here are whether (1) the destruction or loss of the melted plastic mass and coil was accompanied by a "culpable state of mind" and (2) whether the mass and coil were "relevant" to the claims or defenses of Defendant to the extent that a reasonable factfinder could conclude that the lost evidence would have supported its claims or defenses. *Goodman*, 632 F. Supp. 2d at

---

[1] Even under the less burdensome standard of a "preponderance of the evidence," Defendant's motion fails.

[2] Plaintiffs do not dispute that "under the first element [] they . . . had an obligation to preserve the evidence." (Dkt. No. 165-1 at 18).

509; *Johns v. Gwinn*, 503 F. Supp. 3d 452, 470 (W.D. Va. 2020) ("Even after finding that spoliation occurred . . . a court may not impose sanctions remedying the spoliation without first finding that the moving party was actually prejudiced by the spoliation.").

As an initial matter, Defendant's spoliation motion is untimely. "[T]here is a particular need for [spoliation] motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Id.* at 508. While Defendant claims it only noticed the missing melted plastic mass and coil through "through a painstaking review of Mr. Schulz's file" in preparation for trial, (Dkt. No. 146 at 3), the mass and coil were depicted in a color photograph in Plaintiffs' original complaint filed on May 1, 2020, (Dkt. No. 1 at 16). Defendant's excuse for bringing this motion on the eve of trial rings hollow and for the reasons articulated in its order denying Defendant's motion in limine for adverse inferences based on alleged spoliation of the 2007 Silverado, Order and Opinion, (Dkt. No. 192 at 4-7), which rests on substantially similar underlying facts, the Court denies the instant motion for sanctions as untimely. *See Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-CV-07959, 2018 WL 1370862, at *6 (S.D.W. Va. Mar. 16, 2018) ("Presumably frustrated by a lack of evidence to support its claims and defenses in the days winding down to trial, Mountaineer accused Traveler's of destroying relevant evidence, the destruction of which was known to it nearly four years prior to the filing of its motion. Whether the delay is the result of inattention, neglect, or purposeful intent, the court does not know—but the timing of Mountaineer's Motion undermines its claim for relief."); *Id.* at *21 (denying motion for spoliation where expert filed supplemental report raising the "specter of spoliation" but admitted at his subsequent deposition that he was always aware of purportedly missing evidence, aware certain evidence had been moved from one storage location to another, and aware he made "no reference in [his] initial report to [his] alleged inability to render an opinion . . . because of the

way the evidence was handled").

Nevertheless, even on the merits, the Court denies Defendant's motion.

The Court first addresses whether Plaintiffs are sufficiently culpable to warrant sanctions of any kind, be they dismissal of this action or exclusion of all evidence concerning the EVAP Canister. *Goodman*, 632 F. Supp. 2d at 509.

There are three possible states of mind that can satisfy the culpability requirement: bad faith/knowing destruction, gross negligence, and ordinary negligence. *Thompson v. U.S. Dept. of Housing and Urban Development,* 219 F.R.D. 93, 101 (D. Md. 2003) (citing *Residential Funding v. Degeorge Financial Corp.,* 306 F.3d 99, 108 (2d Cir. 2002)). The degree of fault impacts the severity of the sanction, and the Fourth Circuit has established guidelines to determine when the harshest of sanctions, such as summary judgment or default judgment, should be implemented. *See Sampson v. City of Cambridge,* 251 F.R.D. 172, 179 (D. Md. 2008). Generally, dismissal is justified "in circumstances of bad faith or other 'like action,'" *Silvestri,* 271 F.3d at 593 (quoting *Cole v. Keller Industries, Inc.,* 132 F.3d 1044, 1047 (4th Cir.1998)), and courts should impose sanctions that dispose of a case only in the most egregious circumstances:

> [T]o justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, *or* (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Sampson,* 251 F.R.D. at 180 (emphasis added) (quoting *Silvestri,* 271 F.3d at 593). In *Silvestri,* the appellate court concluded that the alterations to the plaintiff's vehicle were tantamount to destroying the "sole piece of evidence" in the case. 271 F.3d at 585. Based on the "deliberate or negligent" actions of the plaintiff, the defendant was denied "access to the only evidence from which it could develop its defenses adequately." *Id.* at 594. Accordingly, without addressing the

8

egregious conduct of the plaintiff, the appellate court ruled that the defendant had suffered "irreparable prejudice," and upheld the district court's granting of summary judgment in favor of the defendant. *Id.* at 594–95

In *Vodusek,* 71 F.3d 148, the appellate court noted that a showing of bad faith is not a prerequisite to obtaining an adverse jury instruction, and a court must only find that the spoliator acted willfully in the destruction of evidence:

> [T]he trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, *it is not always necessary*.... An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party *knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.*

*Id.* at 156 (emphasis added) (citations omitted). In *Vodusek,* the court found that the conduct of a plaintiff's expert in "'employ[ing] destructive methods which rendered many portions of the boat [at issue in the products liability case] useless for examination by the defendants and their experts'" was willful and required an adverse inference because the expert "'ignored the possibility that others might have entertained different theories to which the destroyed portions might have been relevant.'" *Sampson,* 251 F.R.D. at 181 (quoting *Vodusek,* 71 F.3d at 155–57). After *Vodusek*, one court noted that when assessing the willfulness of conduct, it was imperative to recognize that spoliation, "though not conducted in bad faith, could yet be 'intentional,' 'willful,' or 'deliberate.'" *Buckley v. Mukasey,* 538 F.3d 306, 323 (4th Cir.2008). In *Powell v. Town of Sharpsburg,* 591 F.Supp.2d 814, 820 (E.D.N.C. 2008), drawing upon this distinction, the court stated that "[d]estruction is willful when it is deliberate or intentional," whereas "bad faith" was deemed to "mean destruction for the purpose of depriving the adversary of the evidence."

The parties' briefing makes clear that after the Clarendon County Fire Department moved the 2007 Silverado's remains to Lawson's, LKC repeatedly contacted Lawson's to cover the 2007 Silverado with a tarp and Schulz inspected the 2007 Silverado in August 2018. (Dkt. No. 193-3 at 2); (Dkt. No. 146 at 5). At that time, the melted plastic mass and coil were present. In July 2020, Plaintiffs arranged with All Time Roadside Services to secure the 2007 Silverado's remains in a locked metal container and move the vehicle to Hanahan. (Dkt. No. 193-3 at 2). Plaintiffs then engaged Guardian Auto Transport Group LLC to move the 2007 Silverado to Houston in October 2020. (*Id.* at 2-3). Sometime between August 2018 and October 2020, therefore, the plastic mass and coil were lost. While it is unclear how the articles were lost, the Court finds that Defendant has not met its burden of showing the loss was intentional, much less in bad faith.

The Court finds that Plaintiffs are not sufficiently culpable for the loss of the disputed material to warrant the extreme sanction of dismissal. Plaintiffs' conduct was not "so egregious as to amount to a forfeiture of his claim." *Sampson,* 251 F.R.D. at 180. As made clear above, Plaintiffs did not initially choose to store the 2007 Silverado at Lawson's and endeavored to have Lawson's protect the 2007 Silverado. Plaintiffs eventually moved the vehicle into a secure container and documented the process by photo and video, a process about which Defendant has no specific criticism. (Dkt. No. 193-3 at 2). At best for Defendant, if one of the companies which moved the Silverado from Lawson's to Hanahan or Houston lost the mass and coil, it was through negligence. Assuming the Court can impute the negligence of third parties to Plaintiffs, Plaintiffs conduct was not willful, much less in bad faith. *See Vodusek*, 71 F.3d at 157 (affirming district court's allowing adverse inference where plaintiff's agents employed "destructive methods" to inspect allegedly defective boat rendering "many portions of the boat useless for examination by defendants and their experts).

10

The Court also finds that the effect of Plaintiffs' alleged negligent conduct was not "so prejudicial that it substantially denied the defendant the ability to defend the claim." *Sampson,* 251 F.R.D. at 180.  As Defendant's instant briefing and its previously filed motion for summary judgment make clear, (Dkt. No. 45), before March 13, 2023—less than a month before trial—none of Defendant's experts argued that the allegedly missing plastic mass or coil prevented them from opining on the cause of the fire that consumed the 2007 Silverado, *see generally* (Dkt. No. 146). Thus, a sanction such as dismissal of this action is patently inappropriate.  Relatedly, Plaintiffs' conduct does not come close to justifying an adverse inference, *Vodusek*, 71 F.3d at 156 ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party *knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.*") (emphasis added), or Defendant's requested alternative relief, exclusion of all evidence concerning the EVAP Canister, *see Snider-Hancox v. NCL Bahamas LTD.*, No. 17-cv-20942, 2019 WL 13020789, at *3 (S.D. Fla. Feb. 8, 2019) ("Courts may exclude crucial evidence if it is the product of spoliation or if a party's spoliation of crucial evidence has made it impossible for its opponent to rebut the spoliating party's argument.").

Last, Defendant has not established that "the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Goodman*, 632 F. Supp. 2d at 509.  In its reply, Defendant states it was prejudiced as follows:

- GM LLC would have been able to test the material to determine if the remains were the fuel tank or the evaporative emission canister.

- The burn patterns or melt direction on the plastic remains of the canister

11

could have shown rear to front progression of the fire.

- The metal coil could have been tested and analyzed to determine what temperatures it reached to show that it was not the source of the fire, but rather collateral damage of a fire originating in the rear of the vehicle.

- Both pieces of evidence could have further demonstrated that the evaporative emissions canister was among the last components of the 2007 Silverado's fuel system to burn as all other rearward components were consumed.

(Dkt No. 168 at 6) (citing Modi Affidavit, (Dkt. No. 168-1 ¶¶ 22-24) and Olson Affidavit, (Dkt. No. 168-2 ¶¶ 21-23)).

Defendant's newly minted explanations for how the alleged spoliation of the EVAP Canister[3] and coil prejudiced it do not pass muster. While Modi opines that an analysis of the melted plastic could have revealed if the remains were from the fuel tank or EVAP Canister, he provides no specific explanation of *how* this knowledge concretely supports Defendant's case. (Dkt. No. 168-1 ¶ 24) (stating only, in a conclusory manner, that "this evidence would have further demonstrated that the [EVAP Canister] was among the last components of the 2007 Silverado's fuel system to burn"). As to the coil, Olson opines that "since it was made of metal, [it] could have been analyzed microscopically for the presence of mechanical damage and/or thermal effects based on the amount of heat application that it was subjected to during the fire." (Dkt. No. 168-2 ¶ 23). Like Modi, Olson provides no specific explanation of how such an analysis would support Defendant's case. *See* Schulz Declaration, (Dkt. No. 193-1 ¶ 9) (rebutting Olson's argument as a

---

[3] In analyzing Defendant's "prejudice" argument, the Court assumes without finding that the melted plastic remains are those of the EVAP Canister. As explained in detail *supra*, a question of material fact exists as to whether the melted plastic mass is from the 2007 Silverado's EVAP Canister or fuel tank. Accordingly, imposing sanctions on Plaintiffs for the alleged spoliation of this melted plastic mass would be inappropriate because Defendant would not have shown, by at least a preponderance of the evidence, that such evidence was the EVAP Canister and thus relevant. *Zajac*, 2018 WL 9989661, at *3.

"metallic spring can never be the 'source of the fire' because of its metallic composition being non-combustible. Furthermore, considered within the field of forensic fire and explosion investigation and analysis, this premise also is not legitimate because the analysis of metallic springs and the amount of remaining tensile strength as a result of exposure to fire is generally recognized and accepted within the field of fire and explosion investigation and analysis not to be reliable to determine the origin or cause of a fire incident"). At bottom, a reasonable factfinder could not conclude that the lost evidence "would have supported [Defendant's] claims or defense." *Goodman*, 632 F. Supp. 2d at 509. Accordingly, as Defendant cannot establish "relevance," sanctions of any kind are inappropriate.

## Conclusion

For the reasons stated above, the Court **DENIES** Defendant's motion for sanctions (Dkt. No. 146).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Judge

March 30, 2023
Charleston, South Carolina