**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| ALEXANDRINA ATANASSOVA and DAVID PENDERGAST, individually and as parents and natural guardians of S.P., a minor<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:20-cv-1728-RMG<br><br><br><br><br>**GENERAL MOTORS LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |

General Motors LLC ("GM LLC") moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on Plaintiffs' claims. GM LLC relies on the attached memorandum for the law and facts in support of its motion, but for the Court's convenience, the grounds are summarized below.

I.A. Plaintiffs have not shown the 2007 Silverado was in essentially the same condition as when it left GM LLC's control. *See Rife v. Hitachi Const. Mach. Co.*, 363 S.C. 209, 215, 609 S.E.2d 565, 568 (Ct. App. 2005) (The plaintiff "must establish . . . the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant").

I.B. Plaintiffs have not shown under the risk-utility test that the 2007 Silverado was in a defective condition unreasonably dangerous for its intended use. *Branham v. Ford Motor Co.*, 390 S.C. 203, 218, 701 S.E.2d 5 (2010) ("Numerous factors must be considered when determining whether a product is unreasonably dangerous, including the usefulness and desirability of the product, the cost involved for added safety, the likelihood and potential seriousness of injury, and the obviousness of danger.")

I.C. Plaintiffs have not shown the claimed defective condition proximately fcauseed Plaintiffs' injuries; crucial gaps in their proofs have gone unfilled. *See, e.g.*, *Phillips v. Morbark, Inc.*, 481 F. Supp. 2d 461, 464 (D.S.C. 2007) ("A products liability plaintiff must prove the product defect was the proximate cause of the injury sustained.")

I.D. Plaintiffs have not shown there was an alternative design for the 2007 Silverado that would have prevented it from being unreasonably dangerous. *See Branham*,

390 S.C. at 225 (a plaintiff must "show how [their] alternative design would have prevented the product from being unreasonably dangerous").

II. GM LLC is entitled to judgment as a matter of law on Plaintiffs' negligent design claim. *Branham*, 390 S.C. at 210 (Negligent design "imposes the additional burden on a plaintiff of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect[.]")

III. GM LLC is entitled to judgment as a matter of law on negligent infliction of emotional distress claims—especially with respect to David Pendergast. *See Kinard v. August Sash & Door Co.*, 286 S.C. 579, 583, 336 S.E.2d 465 (1985) (NIED requires an expert to opine that the particular plaintiff had "emotional distress . . .manifest[ed] . . . by physical symptoms.").

IV. Without any competent evidence to support the jury's reduction of opined-on damages, the jury would be left to hopelessly speculate; future damages should be precluded. *See, e.g., Hutton v. Essex Grp., Inc.*, 885 F. Supp. 331, 334 (D.N.H. 1994) ("plaintiff bears the burden of coming forward with evidence of the proper rate of discounting. It is axiomatic that the plaintiff must prove her damages to a degree of reasonable certainty and she cannot satisfy that burden without evidence of the amount of future damages reduced to present value." (citing approvingly *Aldridge v. Baltimore & Ohio R. Co.*, 789 F.2d 1061, 1066 (4th Cir. 1986))

GM LLC therefore respectfully submits that Plaintiffs failed to carry their burden of proof as to any of Plaintiffs' claims for strict liability for (i) design defect, (ii) negligent design, and (iii) negligent infliction of emotional distress. This Court should grant judgment as a matter of law on all Plaintiffs' claims. GM LLC also asks this Court to grant judgment as a matter of law on (iv) all Plaintiffs' claims for future damages.

Dated: April 13, 2023

Respectfully submitted,

/s/ *Sarah T. Eibling*

NELSON MULLINS RILEY & SCARBOROUGH LLP
Sarah T. Eibling
Federal Bar 9799
sarah.eibling@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803.799.2000
Facsimile: 803.256.7500

DYKEMA GOSSETT PLLC
Michael P. Cooney
400 Renaissance Center, 35th Floor
Detroit, MI 48243
Telephone: 313.568.6800

BUSH SEYFERTH PLLC
Derek J. Linkous
100 West Big Beaver Road, Suite 400

Troy, MI 48084
Telephone: 248.822.7800
Facsimile: 248.822.7800

Kevin J. Penhallegon
100 S. Charles Street, Suite 1600
kevin.penhallegon@nelsonmullins.com
Baltimore, MD 21201
Telephone: 443.392.9417
Facsimile: 443.392.9499

*Attorneys for General Motors LLC*

## MEMORANDUM

This motion, despite its dispositive nature, is quite simple: Plaintiffs failed to present legally sufficient evidence on each of the essential elements on their strict liability design defect, negligent design defect, and negligent infliction of emotional distress claims relating to the at-issue 2007 Chevrolet Silverado ("2007 Silverado"). Taking the evidence in the light most favorable to Plaintiffs, there remains unbridged gaps in Plaintiffs' proofs of both species (strict liability and negligence) of their design-defect claims under *Branham v. Ford Motor Company*. And because underlying negligence is an indispensable element of *negligent* infliction of emotional distress, that claim fails as well. Moreover, Plaintiffs failed to tender required expert evidence on David Pendergast's physical manifestation of emotional distress; his claim, in particular, lacks a fundamental proof. Finally, Plaintiffs have not provided this jury with a sufficient basis to perform the required task of reducing any future damages to present value. This failure should bar any future damages, even if liability is allowed (contrary to GM LLC's urging) to reach the jury.

Judgment as matter of law is the only appropriate remedy. Plaintiffs have been "fully heard on an issue during a jury trial" and "under the controlling law," they cannot maintain their claims.

## LEGAL STANDARD

GM LLC is entitled to judgment as a matter of law if, now that Plaintiffs have "been fully heard on an issue," a "reasonable jury would not have a legally sufficient evidentiary basis" to find for Plaintiffs. Fed R. Civ. P. 50(a). In doing so, the Court views the evidence in the light most favorable to Plaintiffs. *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160 (4th Cir. 1988) ("[T]he evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party, and the credibility of all evidence favoring the non-moving party is assumed.").[1]

[1] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

"[T]he movant is entitled to judgment as a matter of law if the nonmoving party failed to make a showing on an essential element of this case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Hoban v. Grumman Corp*., 717 F. Supp. 1129, 1133 (E.D. Va. 1989).

**SOUTH CAROLINA PRODUCT-LIABILITY LAW**

As the South Carolina Supreme Court explained in *Branham v. Ford*, strict liability and negligence have some common elements: (1) "was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user." 390 S.C. 203, 226, 701 S.E.2d 5, 17 (2010).

Strict liability also "require[s] . . . showing a feasible alternative design," which also includes "show[ing] how [that] alternative design would have prevented the product from being unreasonably dangerous." *Branham*, 390 S.C. at 220, 225; *see also Newbern v. Ford Motor Co.*, 428 S.C. 310, 316, 833 S.E.2d 861, 864 (Ct. App. 2019) (holding that "the plaintiff must present proof of a feasible alternative design that would have made the product safer"). Put another way, for strict liability to be sustainable, Plaintiffs needed to prove: (1) injury, (2) the 2007 Silverado was in essentially the same condition at the time of the fire as when it left its manufacturer's control, (3) defective condition, (4) that is unreasonably dangerous to the user, (5) that caused Plaintiffs' injuries, and (6) a feasible alternative design.

"A negligence theory imposes the ***additional*** burden on a plaintiff 'of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect, and, unlike strict

liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault.'" *Branham*, 390 S.C. at 220 (quoting *Bragg v. Hi–Ranger, Inc.*, 319 S.C. 531, 539, 462 S.E.2d 321, 326 (Ct. App. 1995)); *see also* Anderson, S.C. Requests to Charge - Civil, 32-19. That is, atop the strict liability elements, Plaintiffs must also prove a breach of the standard of care. *See J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 368, 635 S.E.2d 97, 101 (2006) (elements of negligence). On breach, Plaintiffs must show *what* the standard of care is and *how* it was breached. *See Elledge v. Richland/Lexington Sch. Dist. Five*, 352 S.C. 179, 189, 573 S.E.2d 789, 794 (2002) ("experts' testimony went to the element of breach of duty whereas the specific evidence of industry standards was intended to establish the applicable duty of care").

Finally, negligent infliction of emotional distress adds further elements beyond negligence. In *Kinard v. August Sash & Door Co.*, 286 S.C. 579, 336 S.E.2d 465 (1985), South Carolina adopted the cause of action for negligent infliction of emotional distress with the following elements: (a) the negligence of the defendant must cause death or serious physical injury to another; (b) the plaintiff bystander must be in close proximity to the accident; (c) the plaintiff and the victim must be closely related; (d) the plaintiff must contemporaneously perceive the accident; and (e) the emotional distress must both manifest itself by physical symptoms capable of objective diagnosis and be established by expert testimony. *Kinard*, 286 S.C. at 582–83. While all of Plaintiffs' NIED claims fail for a lack of underlying negligence, Plaintiffs failed to proffer expert evidence of David's "emotional distress . . . manifest[ed] . . . by physical symptoms." *Id*. at 583.

## ARGUMENT

### I. Plaintiffs' strict liability proofs lack essential elements on which a reasonable jury could find for them.

Plaintiffs' evidence on the strict liability design claim is lacking on all but one elements required by South Carolina law, as set out above. While GM LLC does not contest that Plaintiffs were injured, Plaintiffs have failed in their proofs as to the remaining elements.

#### A. Plaintiffs have not shown the 2007 Silverado was in essentially the same condition as when it left GM LLC's control.

Plaintiffs failed to establish that, at the time of the subject 2018 fire, the 2007 Silverado was in essentially the same condition as when it left GM LLC's control. *See Rife v. Hitachi Const. Mach. Co.*, 363 S.C. 209, 215, 609 S.E.2d 565, 568 (Ct. App. 2005); *see also, e.g., Ellison v. Rehab. Servs. of Columbus*, No. 3:06-1053, 2007 WL 486398, at *2 (D.S.C. Feb. 12, 2007) (granting summary judgment because, among other reasons, "Plaintiff has failed to present evidence from which a reasonably jury could conclude that the machines [wa]s in the same condition as when it left Defendant's hands"); *see also Branham*, 390 S.C. at 226 (any strict liability claim requires "the product, at the time of the accident, [be] in essentially the same condition as when it left the hands of the defendant.").

Indeed, Plaintiff David Pendergast effectively conceded that the Silverado ***was not*** in essentially the same condition. This vehicle had "over 211000 miles" on it when he took possession of it.[2] That is beyond the useful life of a vehicle, according to Mr. Hannemann. 4/13 p.m. TT. But even more, it had a non-approved dual exhaust:

> Q. And you did know that the vehicle had a dual exhaust on it prior to June 27th, 2018?

[2] *See* 4/11 TT (rough) at p. 125 ("by the time you had taken possession of the vehicle or the time that your dad gave you the vehicle, it had over 211000 miles. Is that accurate? A. Yes, ma'am, if you say so.").

A. Yes, ma'am.

Q. And you did not install it; is that correct?

A. No, ma'am.

Q. Did you ever have it validated or verified by dealership or --

A. No, ma'am.

4/11 TT (rough) at p. 128; *see also* 4/13 a.m. TT (Manoj Modi, by deposition, confirming the aftermarket/non-GM nature of the 2007 Silverado's dual exhaust). Finally, the 2007 Silverado was shown to have leaking brake fluid in the months leading up to the incident. DX 5. The ***material*** changes in the condition of the vehicle ***years after*** it left GM LLC's control forecloses Plaintiffs' claims.

Where, as here, the product's condition substantially different, it cannot be said to be "in essentially the same condition" as when it left the hands of the manufacturer. *Branham*, 390 S.C. at 245; *Ellison*, 2007 WL 486398 at *2. This also draws parallels to *Baughman v. Gen. Motors Corp.*, 627 F. Supp. 871, 874 (D.S.C. 1985), aff'd, 780 F.2d 1131 (4th Cir. 1986) ("[A] plaintiff may recover against a manufacturer only upon a showing that the product was in a defective condition unreasonably dangerous *at the time* it left the manufacturer's control. As a necessary corollary, the plaintiff must be capable of showing that the defendant either manufactured, sold or exercised control over the defective product."). There, the plaintiff was injured while changing a truck tire when a rim assembly separated explosively. *Id*. at 872. The plaintiff sued General Motors Corp., the manufacturer of the truck that the plaintiff was working on at the time of the injury. *Id*. It was determined that the type of rim assembly involved was not original equipment on the model year of the truck in question. *Id*. And the plaintiff could not show that the rim assembly had been manufactured by General Motors, nor placed into the stream of commerce by General Motors by

being installed as original equipment on any vehicle manufactured by General Motors. *Id.* at 872–873. That court concluded that "[b]ecause plaintiff cannot show that the defendant exercised dominion over the allegedly defective rim, defendant may not be held liable under any tort theory." *Id*. at 878. Further, "[i]f the defect is not present at the time a product leaves the control of the manufacturer, but is later introduced into the product by another, the manufacturer may not be held liable under the theory of strict products liability." *Id.* at 878.

Plaintiffs simply cannot contest that the 2007 Silverado was materially changed by the time of the at-issue fire, thus, judgment as a matter of law is appropriate. Fed. R. Civ. P. 50(a).

**B. Plaintiffs have not shown under the risk-utility test that the 2007 Silverado was in a defective condition, unreasonably dangerous for its intended use.**

On the third and fourth elements regarding defective condition unreasonably dangerous to the user, Plaintiffs' strict liability claim likewise falters.

At the outset of this discussion, it is important to emphasize that while this procedural posture allows for inferences to be drawn in Plaintiffs' favor, existence of a defect cannot be inferred from the mere fact a product failed. *See Graves v. CAS Med. Sys., Inc.*, 735 S.E.2d 650, 658–59 (S.C. 2012). This is so "the mere fact that the product could be 'stronger' or 'safer' does not establish a design defect or an unreasonably dangerous condition, as a matter of law." *Disher v. Synthes (U.S.A.)*, 371 F. Supp. 2d 764, 770 (D.S.C. 2005); *see also infra* at II (discussing stone impingement test). Indeed, "[i]t is a fundamental principle of the law of products liability that a product manufacturer is not an insurer of its product." *Baughman*, 627 F. Supp. at 874. Mr. Hannemann testified that this vehicle was defective simply because it could be made safer.

> Q. Is the [unintelligible] of the evaporations emissions canister on the subject vehicle, is that a design defect in your opinion, Mr. Hannenann?
>
> A. Yes, it is.

> Q. And why is that?
>
> A. The -- the canister is in the area where it can be damaged, and there are safer alternative designs that can either protect the canister or locate it in a safer area.

South Carolina law doesn't permit a finding of defectiveness based on this. *Disher*, 371 F. Supp. 2d at 770. That is all Mr. Hannemann has given the jury, however.

Rather, this jury will evaluate a design defect, if any, under the risk-utility test. *See Miles v. DESA Heating LLC*, No. 4:10-cv-00521, 2012 WL 1038677, at *6 (D.S.C. Mar. 28, 2012) (citing *Bragg*, 319 S.C. at 543–44). Under the risk-utility test, a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product. *Id*. "Numerous factors ***must be considered*** when determining whether a product is unreasonably dangerous, including the usefulness and desirability of the product, the cost involved for added safety, the likelihood and potential seriousness of injury, and the obviousness of danger." *Branham*, 390 S.C. at 218.

For risk-utility, Plaintiffs relied on their lone expert Mr. Hannemann. But he did not offer more than a top-line conclusion. No testimony was elicited on:

- "the usefulness and desirability of the product as designed";
- "the likelihood . . . of injury"; or
- the "potential seriousness of injury."

*Branham*, 390 S.C. at 218. Fuel and exhaust systems design is complex—hence, why Plaintiffs have presented experts on it. But without testimony from any of Plaintiffs' experts on these "must-consider" aspects of the risk-utility test, a verdict in Plaintiffs' favor on these elements could only be the result of speculation. That will not do. *See Goodman v. Revco Disc. Drug Centers, Inc.*, No. 3:03-CV-2657-MBS, 2005 WL 6740407, at *4 (D.S.C. Aug. 18, 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (standards under Rules 50(a) and 56 are the same).

Finally, the testimony around PX 38 is chronologically irrelevant and was evidentiarily limited. *See* 4/13 a.m. TT (Court instructing on limited purpose for "demonstration of [a] physical principle"); *see also infra* at II. And no inference can substitute for this lack of proof. *See Graves*, 735 S.E.2d at 658–59.

In all, Plaintiffs have not shown that a reasonable jury could find the 2007 Silverado to be defective or unreasonably dangerous. Judgment as a matter of law should issue. *See* Fed. R. Civ. P. 50(a).

### C. Plaintiffs have not shown the claimed defective condition proximately caused Plaintiffs' injuries.

"A products liability plaintiff must prove the product defect was the proximate cause of the injury sustained. Proximate cause requires proof of both causation in fact and legal cause[.]" *Phillips v. Morbark, Inc.*, 481 F. Supp. 2d 461, 464 (D.S.C. 2007). Critically, a plaintiff "must show that it is more likely than not that the conduct of the defendant was a ***substantial factor*** in bringing about the result." *Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 498 (D.S.C. 2001). "A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*.

Again, taking the evidence presented in the light most favorable to Plaintiffs, Plaintiffs' fire origin expert Michael Schultz testified that this was a "diffuse fuel vapor fire." 4/12 p.m. TT (rough) at pp. 39-40. He left determining the source to others. *Id.* at pp. 59-60 ("I identified that the leading edge of the fuel tank was within that defined area of origin. Others did the analysis of what failed, to release fugitive vapors of gasoline, whether it's field tank or evaporative emissions canister. They're right next to each other. I'm not able to tell by looking at the --"). Notably, he admitted that fire can only occur if vapors are within a specific range of concentrations. *Id.* at pp.

64-65; *see also* 4/13 a.m. TT (Manoj Modi, by deposition, confirming the "import[]" of this range). But Mr. Schultz was candid that he did not know two of things that are necessary to start a fire: (1) ignition source,[3] and (2) fuel source[4]—just that there was a diffuse vapor fire. That is, Mr. Schulz testified that causation requires an ignition source and a fuel source in a specified concentration.

To be sure, Mr. Hannemann testified as follows as to cause: "The cause of the fire was while the vehicle was in motion at 70 miles an hour, road debris was able to damage what's called the evap canister. This canister contains fuel vapor. You can accidentally get fuel in it if you overfill your tank. But it typically contains vapor. The highly fla[mm]able vapor was released when the canister was damaged and that started the fire." 4/13 a.m. TT. That is he testified that road debris damaged the evaporative emissions cannister. Importantly, Mr. Hannemann ***never*** testified that road debris was the ignition source (i.e., sparked)—as Mr. Schulz admitted would be needed (but did not do). Even couched in an opinion Mr. Hannemann was candid: "it's difficult to actually pin down the exact source or exactly what happened." 4/13 a.m. TT. Later, Mr. Hannemann also admitted that he did ***not*** determine whether there was a competent ignition source. 4/13 p.m. TT. But Mr. Hannemann never studied or tested the possible concentration from an evaporative emissions canister rupture. 4/13 p.m. TT (Hannemann). Finally, as to Mr. Hille's cannister testing, but that, the Court recognized, "just show[s] a princip[le] of physics that it could crack." ECF 238 at 15:1-11. Or in Mr. Hannemann's words, simply the "flammability of the components." 4/13 p.m TT.

---

[3] 4/12 p.m. TT (rough) at pp. 66-67 ("Q. Now, have you reached an opinion to a reasonable degree of fire science certainty as to what the ignition source was for the diffuse fugitive fuel vapors? A. I have not, . . . Q. . . .How many potential would be available for this vehicle? . . . Q. Have you been able to eliminate any of those for the jury? A. No.").

[4] 4/12 p.m. TT (rough) at pp. 59-60.

In all, Plaintiffs do not have enough to sustain Plaintiffs' burden on causation: that the claimed defect *caused* this fire. *See Little*, 243 F. Supp. 2d at 498 ("A mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."). Put another way, Plaintiffs claim a defect and, of course, there was a fire, but nothing bridges the two—that is essential to causation. And that is what Plaintiffs lack.

Therefore, lack of causation also mandates judgment as a matter of law in GM LLC's favor. *See* Fed. R. Civ. P. 50(a).

**D. Plaintiffs have not shown there was an alternative design for the 2007 Silverado that would have prevented it from being unreasonably dangerous.**

Plaintiffs likewise failed to satisfy their burden to prove that a reasonable alternative design existed at the time the 2007 Silverado left GM LLC's control and that their alternative design would have prevented the vehicle from being unreasonably dangerous.

South Carolina law compels a plaintiff in a design-defect case to satisfy "the risk-utility test with its requirement of showing a feasible alternative design." *Branham*, 390 S.C. at 220. It is Plaintiffs' burden to "present evidence of a reasonable alternative design" and to "show how [their] alternative design would have prevented the product from being unreasonably dangerous." *Id*. at 225; *see also Little v. Brown & Williamson Tobacco Corp.*, 243 F. Supp. 2d 480, 495 (D.S.C. 2001) ("The existence of a safer alternative design is a crucial aspect of a product liability case in South Carolina."). The burden is not met "merely because [the product] can be made more safe." *Todd v. Ford Motor Co.*, No. 3:10-cv-787, 2013 WL 178261, at *2 (D.S.C. Jan. 17, 2013). An expert's "presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design." *Branham*, 390 S.C. at 225; *see also Newbern v. Ford Motor Co.*, 428 S.C. 310, 316, 833 S.E.2d 861, 864 (Ct. App. 2019) (holding that

"the plaintiff must present proof of a feasible alternative design that would have made the product safer"); *Hulsizer v. Magline, Inc.*, No. 4:17-cv-415, 2018 WL 5617873, at *4 (D.S.C. Oct. 29, 2018).

Here, this jury received no testimony on overall costs (Mr. Hannemann's $3 figure is not enough—*see* GM LLC's MIL No. 9) and functionality of the proposed alternative designs were not considered. No evaluation was done on how or where GM LLC could have practically located or mounted or shielded the emissions canister differently. *See also* 4/13 p.m. TT (Hannemann testifying "need to change the floor" for one of his alternative designs). This jury was shown no alternative design manufactured by Plaintiffs' experts—just "concepts." 4/13 p.m. TT (Hannemann). Mr. Hannemann acknowledged that his proposed alternative design would need to be developed and tested and that there might even be "small failures." *See id.* But even more, no showing was made that such change would have mattered in this accident. On this score, *Whaley v. BMW of North America, LLC*, is helpful. No. 2:04-cv-22443, 2005 WL 8162794 (D.S.C. Dec. 8, 2005). There, the plaintiff claimed a vehicle fire occurred because "an improperly guarded catalytic converter ignit[ed] debris and/or dry grass beneath the idling vehicle, compromising the fuel system and causing the fire." *Id.* at *1. The expert failed to provide evidence about "the performance of these designs. [He] neither cite[d] to nor claim[ed] to have performed any studies or tests that compare the relative heats that emanate from each allegedly superior converter, nor does he cite to or perform studies that test the effectiveness of the heat shields in preventing fires." *Id.* Such testimony was not even enough to get past Rule 702, let alone reach the jury.

The strict liability claim therefore also fails for lack of alternative design.

* * * *

In sum, Plaintiffs lack sufficient proof on (a) the essentially the same condition element;

(b) the defective and unreasonably dangerous elements; (c) the causation element; and (d) the feasible alternative design requirement. Submission of strict liability to the jury against this backdrop would be improper as a "reasonable jury would not have a legally sufficient evidentiary basis" to find for Plaintiffs. Fed R. Civ. P. 50(a).

## II. GM LLC is entitled to judgment as a matter of law on Plaintiffs' negligent design claim.

Although "strict liability and negligence are not mutually exclusive theories of recovery," where a "strict liability claim [i]s dismissed due to the absence of an element shared by the companion negligence claim, the negligence claim should [be] dismissed as well." *Branham*, 390 S.C. at 211–212. Therefore, the failures in Plaintiff's strict liability proofs also doom their negligence design claim. But, as noted above, a claim for negligent design "imposes the additional burden on a plaintiff of demonstrating the defendant (seller or manufacturer) failed to exercise due care in some respect[.]" *Branham*, 390 S.C. at 210. The falling on the "additional burden" independently bars the negligent design claim.

Even if Plaintiffs satisfied the elements required under strict liability (they haven't), they nevertheless failed to show GM LLC breached its duty to exercise reasonable care to adopt a safe design for the 2007 Silverado. The "rule is well settled that neither designer nor manufacturer has a legal duty to produce a product incorporating only features representing the ultimate in safety." *Austin v. Clark Equip. Co.*, 48 F.3d 833, 837 (4th Cir. 1995). Rather, a manufacturer only has a duty to design a reasonable product, not an accident-proof one. *See Baughman*, 627 F. Supp. at 874 ("It is a fundamental principle of the law of products liability that a product manufacturer is not an insurer of its product."); *see also Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 484 (D.S.C. 2014) ("In South Carolina, a manufacturer has the duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous

defect in manufacturing or design."). Thus, evidence merely that there may have been a "better" design for the 2007 Silverado's evaporative emissions canister fails to prove that the design used was unreasonably dangerous.

To be sure, Mr. Hannemann opined that he would have done things differently. But while a jury is capable of ascertaining what a reasonable person might do for ordinary negligence, what a reasonable manufacturer would have known and done in 2007 was not presented. *See Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 358, 191 S.E.2d 774, 779 (1972). Negligence, if any, is evaluated from "the time of manufacture." *See Branham*, 390 S.C. at 210; *see also Andrews v. CBS Corp.*, No. 2:13-CV-2055-RMG, 2015 WL 12831309, at *1 (D.S.C. June 24, 2015) ("trial court correctly charged jury that there is no-post sale duty to recall or retrofit products" (citing *Bragg*, 462 S.E.2d at 331)). No one provided the jury a yardstick to measure GM LLC's conduct by. Indeed, Mr. Hannemann acknowledged, saying "Right" that "industry safety standards" are not "violate[d]" by "release of a vapor from a canister in a crash." 4/13 p.m. TT. And "[n]o inference of negligence arises from the mere fact of injury." *Snow v. City of Columbia*, 305 S.C. 544, 555, 409 S.E.2d 797, 803 (Ct. App. 1991). Without a standard of care, no negligence claim can be pursued. *See Elledge*, 352 S.C. at 189; Fed. R. Civ. P. 50(a).

On this claim, Plaintiffs principally relied on the claimed failed stone impingement test. But proof was elicited that was a pre-production test, and not shown to be specific to Plaintiffs' Silverado. *See* 4/13 a.m. TT (Modi dep.). Mr. Hannemann admitted that the Silverado compiled with all FMVSS related to fuel-systems integrity. *See* 4/13 p.m. TT ("Q. And I think you would agree with me that the subject vehicle here met all the federal motor vehicle safety standards relating to fuel system crash performance, true? A. [Y].); *accord* 4/13 a.m. TT (Modi dep.); *see also Bragg*, 319 S.C. at 543 ("The state of the art and industry standards are relevant to show both

the reasonableness of the design and that the product is dangerous beyond the expectations of the ordinary consumer.”). Most importantly, however, the South Carolina Supreme Court has held that “an alleged failure to test cannot be the proximate cause of an injury.” *Branham*, 390 S.C. at 210. If the failure to test is not enough, *a fortiori*, the failure to test ***more*** can likewise not support negligence. *Cf. id.* The stone impingement test does not advance Plaintiffs’ negligence claim.

Finally, Plaintiffs have wrongly pointed to testimony around and PX 38 itself as evidence of negligence. But this warranty claim document post-dated the manufacture of the 2007 Silverado by ***nearly 3 years***. Negligence is adjudged at the time of manufacture. *Branham*, 390 S.C. at 226, 701 S.E.2d at 17 (“In order for a plaintiff to prove his case in a product liability action, he must show that the product was in a defective condition at the time that it left the hands of the particular seller . . . Because the claim here is against the manufacturer, the time of distribution is the time of manufacture.”). This is the logical outgrowth of the fact that South Carolina does not recognize post-sale duties. *Andrews*, 2015 WL 12831309, at *1. Indeed, the limitation was recognized in this Court’s limiting instruction on the PX 38 testimony. *See* 4/13 a.m. TT.

* * * *

Plaintiffs’ negligent design claim fails because they lack requisite evidence on (i) the common elements with strict liability (here, same condition, defective/unreasonably dangerous, causation, and alternative design), and (ii) the *additional* burden of fault. *See Branham*, 390 S.C. at 210.

## III. GM LLC is entitled to judgment as a matter of law on negligent infliction of emotional distress claims—especially with respect to David Pendergast.

As with the failing of strict liability undercutting negligent design, the lack of essential elements of Plaintiffs’ proofs on negligence undermines Plaintiffs’ negligent infliction of emotional distress claim across the board. *See Kinard*, 286 S.C. at 582–83 (negligence is an

element of NIED). Because Plaintiffs' negligence-based products claims fail, so too their negligent infliction of emotional distress claim fails as a matter of law. *See Branham*, 390 S.C. at 211–212.

Even if the negligent design claim were sufficient so as to support an NIED claim (it isn't), *see supra* at II, Plaintiffs lack an indispensable element on Plaintiff David Pendergast's claim. The South Carolina Supreme Court has been clear that recovery in NIED requires an expert to opine that a given plaintiff had "emotional distress . . .manifest[ed] . . . by physical symptoms." *Id.* at 583. Dr. Kahn, the only expert on this score, did not do so with respect to David Pendergast. All Dr. Kahn said was "David's a very stoic individual. And his defense mechanisms are that he shuts things down that bother him. . . . David would benefit from seeing a counselor." 4/11 TT (rough) at pp. 72-73 Moreover, Mr. Pendergast was express that he has no physical symptoms of claimed emotional distress:

> Q. I want to focus a little bit more on you before I talk about Sunny's and Sophia. How has this impacted you. Obviously you're emotional. But sleeping, your day-to-day, help us understand?
>
> A. ***That's all pretty much normal with me.*** I got [*sic*] to sleep okay. I wake up, I go to work for them. I come home, and I just wanted to hang out with my family. It's pretty much back to normal on that front.

4/11 TT (rough) at p. 111. There was no proof of physical manifestation *from an expert*—the only one offered was Dr. Kahn—as to Mr. Pendergast's emotional distress. *See Kinard*, 286 S.C. at 583.

No NIED claims at all should reach the jury, but certainly not for Mr. Pendergast. *See* Fed. R. Civ. P. 50(a).

**IV. Without any competent evidence to support the jury's reduction of opined-on damages, the jury would be left to hopelessly speculate; future damages should be precluded.**

Plaintiffs agree—as they must—that "[a]ny future damages that [the jury] awards must be reduced to their present-day value." ECF 181 at 32 (collecting authority). But they have not provided any witness (or any other evidence) to discount damages to present day. Dr. Kahn opined on future medical damages based on today's cost of care for S.P. 4/12 p.m. TT (rough) at p. 51. But that is an undiscounted future damages figure. He did the same for David Pendergast, laying bare that there was no discounting or adjustments being made:

Q. And so based on a reasonable medical probability in today's dollars, what would be the cost of that therapy that he needs be?

A. He probably would need quarterly appointments at $379 each for 10 years.

Q. Okay. Can you give me, in today's dollars, the value of that?

A. 379 times four times 10.

Q. You don't expect me to know that.

A. So that would be about 37,900 per year. 1200-and- something per year times 10 years. So, 12 or $15,000.

4/12 a.m. TT (rough) at pp. 80-81. This is strictly taking the cost of care ($379) multiplying it for four quarters and ten years. Dr. Kahn is making *no adjustments* at all. To complicate things further, Dr. Kahn then opined "in 2020 dollars" as to Alexandrina Atanassova's future damages. 4/12 a.m. TT (rough) at p. 77.

Contrast this with the work an actual economist would do—and what this jury would need to do. Plaintiffs had on their will-call list Dr. Kenneth Boudreaux. *See* ECF 144 at 3. A quick perusal of Dr. Boudreaux's reports shows the type of analysis that is required for a present-value calculation. *See* ECF 212 at 9–48. Dr. Kahn did none of this; the jury can do none of this and is

left to hopelessly speculate about what these Plaintiffs' future damages are in present-day value. *See, e.g.*, *Hutton v. Essex Grp., Inc.*, 885 F. Supp. 331, 334 (D.N.H. 1994) ("plaintiff bears the burden of coming forward with evidence of the proper rate of discounting. It is axiomatic that the plaintiff must prove her damages to a degree of reasonable certainty and she cannot satisfy that burden without evidence of the amount of future damages reduced to present value." (citing *Aldridge v. Baltimore & Ohio R. Co.*, 789 F.2d 1061, 1066 (4th Cir. 1986))).

Plaintiffs had, but failed, to admit evidence that would allow this jury to do the mandated task of reducing Dr. Kahn's numbers to present value. That omission should bar any claim for future damages.

**CONCLUSION**

For the foregoing reasons as well as those presented orally on the record, GM LLC respectfully submits that Plaintiffs failed to carry their burden of proof as to any of their claims warranting that this Court grant this motion for a judgment as a matter of law on Plaintiffs' claims for strict liability for design defect, negligent design, and negligent infliction of emotional distress. GM LLC also asks this Court to grant judgment as a matter of law on all Plaintiffs' claims for future damages.

Dated: April 13, 2023

Respectfully submitted,

<u>/s/ *Sarah T. Eibling*</u>

NELSON MULLINS RILEY & SCARBOROUGH LLP
Sarah T. Eibling
Federal Bar 9799
sarah.eibling@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803.799.2000
Facsimile: 803.256.7500

Kevin J. Penhallegon

DYKEMA GOSSETT PLLC
Michael P. Cooney
400 Renaissance Center, 35th Floor
Detroit, MI 48243
Telephone: 313.568.6800

BUSH SEYFERTH PLLC
Derek J. Linkous
100 West Big Beaver sssssssRoad, Suite 400

Troy, MI 48084
Telephone: 248.822.7800
Facsimile: 248.822.7800

100 S. Charles Street, Suite 1600
kevin.penhallegon@nelsonmullins.com
Baltimore, MD 21201
Telephone: 443.392.9417
Facsimile: 443.392.9499

*Attorneys for General Motors LLC*